# CIVIL CASE NO. 15-1328

## UNITED STATES CIRCUIT COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

M.D. Leena Varughese,

Plaintiff - Appellant,

v.

Mount Sinai Medical Center, M.D. Adolfo Firpo-Betancourt, M.D. Carlos Cordon-Cardo, M.D. Patrick Lento, M.D. Ira J. Bleiweiss, John Does, 1-10,

Defendants - Appellees,

ABC Corporation, Inc., 1-10,

Defendant.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR SOUTHERN DISTRICT OF NEW YORK
### (Case No. 12-cv–8812)

---

## BRIEF OF THE APPELLANT LEENA VARUGHESE, MD

Leena Varughese, M.D.<br>
<i>Pro Se Appellant</i><br>
<i>PH: 908-265-7536</i>

# **<u>TABLE OF CONTENTS</u>**

<u>Page(s)</u>

| | |
|---|---|
| Table of Contents | i |
| Table of Authorities - for referential purpose, alphabetical order | ii—vi |
| Statues & Rules | vii |
| Statement of Subject Matter & Appellate Jurisdiction | 1 |
| Statement of the Case | 2-4 |
| Statement of Facts | 4-7 |
| Summary of Arguments | 7-38 |
| Statement of relief sought | 38-39 |
| Conclusion | 39-40 |
| Certificate of Compliance | 41 |
| Certificate of Service | 42 |

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Albunio v. City of New York*, 947 N.E.2d 135, 16 N.Y.3d 472, 922 N.Y.S.2d 244 (2011).

*Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002).

*BellSouth Telecommunications v. WR Grace*, 77 F.3d 603 (2d Cir. 1996).

*Beyer v. County of Nassau*, 524 F.3d 160 (2d Cir. 2008).

*Bickerstaff v. Vassar College*, 196 F.3d 435 (2d Cir. 1999).

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).

*BURLINGTON N. & SFR CO. v. White*, 547 U.S., 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).

*Carlton v. Mystic Transp., Inc.*, 202 F.3d 129 (2d Cir. 2000).

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

*Chertkova v. Connecticut General Life Ins. Co.*, 92 F.3d 81 (2d Cir. 1996).

*Cifra v. GE Co.*, 252 F.3d 205 (2d Cir. 2001).

*Colon v. Fashion Institute of Technology*, 983 F. Supp. 2d 277 (S.D.N.Y. 2013).

*Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d Cir. 2000).

*Demoret v. Zegarelli*, 451 F.3d 140 (2d Cir. 2006).

*Faragher v. Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).

*Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004).

*Forrest v. Jewish Guild*, 819 N.E.2d 998, 3 N.Y.3d 295, 786 N.Y.S.2d 382 (2004).

*Galabya v. New York City Bd. of Educ.*, 202 F.3d 636 (2d Cir. 2000).

*Gallagher v. Delaney*, 139 F.3d 338 (Court of Appeals, 2nd Circuit 1998).

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010).

*Graham v. Long Island RR*, 230 F.3d 34 (2d Cir. 2000).

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001).

*Grillo v. New York City Transit Authority*, 291 F.3d 231 (2d Cir. 2002).

*Guilbert v. Gardner*, 480 F.3d 140 (2d Cir. 2007).

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).

*Holcomb v. Iona College*, 521 F.3d 130 (2d Cir. 2008).

*Howley v. Town of Stratford*, 217 F.3d 141 (2d Cir. 2000).

*James v. New York Racing Ass'n*, 233 F.3d 149 (2d Cir. 2000).

*Kaytor v. Electric Boat Corp.*, 609 F.3d 537 (2d Cir. 2010).

*Leibowitz v. Cornell University*, 584 F.3d 487 (2d Cir. 2009).

*Lizardo v. Denny's, Inc.*, 270 F.3d 94 (2d Cir. 2001).

*Loeffler v. Staten Island University Hosp.*, 582 F.3d 268 (2d Cir. 2009).

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

*McGuinness v. Lincoln Hall*, 263 F.3d 49 (2d Cir. 2001).

*Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 946 N.Y.S.2d 27 (App. Div. 2012).

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102 (2d Cir. 2013).

*National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).

*Norton v. Sam's Club*, 145 F.3d 114 (2d Cir. 1998).

*Owens v. New York City Housing Authority*, 934 F.2d 405 (2d Cir. 1991).

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007).

*Petrosino v. Bell Atlantic*, 385 F.3d 210 (2d Cir. 2004).

*Phillips v. Bowen*, 278 F.3d 103 (2d Cir. 2002).

*Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir. 1998).

*Raspardo v. Carlone*, 770 F.3d 97 (2d Cir. 2014).

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Ricci v. DeStefano*, 129 S. Ct. 2658, 557 U.S. 557, 174 L. Ed. 2d 490 (2009).

*Richardson v. New York State Dept. of Corr. Ser.*, 180 F.3d 426 (2d Cir. 1999).

*Ruiz v. County of Rockland*, 609 F.3d 486 (2d Cir. 2010).

*Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597 (2d Cir. 2006).

*Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000).

*Schwapp v. Town of Avon*, 118 F.3d 106 (2d Cir. 1997).

*Scott v. Harris*, 127 S. Ct. 1769, 550 U.S. 372, 167 L. Ed. 2d 686 (2007).

*Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161 (2d Cir. 2006).

*Slattery v. Swiss Reinsurance Amer. Corp.,* 248 F.3d 87 (2d Cir. 2001)

*Spiegel v. Schulmann*, 604 F.3d 72 (2d Cir. 2010).

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

*Summa v. Hofstra University*, 708 F.3d 115 (2d Cir. 2013).

*Sumner v. US Postal Service*, 899 F.2d 203 (2d Cir. 1990).

*Swierkiewicz v. Sorema NA*, 534 U.S. 506 (2002).

*Tarshis v. Riese Organization*, 211 F.3d 30 (2d Cir. 2000).

*Treglia v. Town of Manlius*, 313 F.3d 713 (2d Cir. 2002).

*UNIV. OF TEX. SOUTHWESTERN MED. v. Nassar*, 133 S. Ct. 2517, 570 U.S., 186 L. Ed. 2d 503 (2013).

*Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708 (2d Cir. 1996).

*Webb-Weber v. COMMUNITY INC.*, 23 N.Y.3d 448, 15 N.E.3d 1172, 992 N.Y.S.2d 163 (2014).

*Weinstock v. Columbia University*, 224 F.3d 33 (2d Cir. 2000).

*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62 (2d Cir. 2000).

*Williams v. General Motors Corp.*, 187 F.3d 553 (6th Cir. 1999).

*Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27 (2009).

**Statutes & Rules:**

42 U.S. Code § 2000e et seq - Unlawful employment practices

42 U.S. Code § 1981, 1981a - Equal rights under the law

New York State Executive Law, Article 15, Human Rights Law, §§ 290 - 301

The New York City Human Rights Law, N.Y. Admin. Code § 8-109, et seq.

JURISDICTIONAL STATEMENT

This action originated in the United States District Court for the Southern District of New York. Plaintiff, Dr. Leena Varughese filed a complaint after suffering discrimination, retaliation, and tortious conduct in violation of federal, state, and local statutes and rules conducted against Plaintiff by Defendants, Mount Sinai Medical Center et al.

This appeal seeks to reverse the final order of the district court, which in March 2015 granted the Defendant's motion for summary judgment. This United States Court of Appeals for the 2nd Circuit has proper jurisdiction to hear this appeal, pursuant to 28 U.S.C. § 1291. The delay in filing the appeal is from a protracted attempt to obtain legal representation and the ensuing difficulties with securing competent legal counsel.

STANDARD OF REVIEW

The standard of review for this appeal can be based on de novo, substantial evidence, and clearly erroneous standards applied to the scope of review of discrimination, hostile work environment, and retaliation claims by private corporate parties and it's employees against a private individual.

ISSUES PRESENTED FOR REVIEW

I.    Whether the district court applied applicable laws and rules to the evidence presented by the Plaintiff, along with the application of rules of evidence

in a civil case were properly applied in the interest of justice and for the equitable resolution of the complaint.

## STATEMENT OF THE CASE

Leena Varughese (Varughese) filed this appeal in April 2015, in the United States Court of Appeals for the 2nd Circuit, seeking a reversal of a decision from the United States District Court for the Southern District of New York.

In September 2011, while employed as a post-graduate physician by Mount Sinai Medical Center also known as Mount Sinai Hospital that has since expanded into Mount Sinai Health System, Dr. Varughese was subjected to retaliatory termination after an extended period of discrimination on the basis of her National Origin and Race, gender, and in retaliation on the basis of her protected complaints and protected classes of National Origin and race and gender. Varughese complained of retaliation and discrimination by her being singled and targeted for retaliation. Mount Sinai Medical Center et al engaged in a series of discriminatory and retaliatory actions against her using pretext and that lead to creation of further pretext with which to terminate her employment in the final year of her post-graduate program after completing over three of the four years of her residency in the most objectively dysfunctional and horrific workplace.

Following the termination of her employment, the Defendant Institution and Defendants have fabricated and colluded to exclude Varughese from her chosen

professional field of Anatomic and Clinical Pathology through systematic acts of retaliation that included fabrications and prevention of Varughese from obtaining gainful employment by sabotaging her efforts and then, publishing false and irrelevant statements with regards to Varughese to harm her career and future as a young women immigrant doctor.

Varughese filed administrative complaints with Equal Employment Opportunity Commission where her knowledgeable investigator was promptly removed, and the case was sabotaged internally in the EEOC with various contradictory and false statements made against Varughese to EEOC by Defendants. The EEOC did not follow up with Varughese after the removal of the investigator and then alleged that they had flooded their office etc. Varughese filed the lawsuit in Southern District of New York which was met with a Judge McMahon who pretended to understand the gravity of the case initially, but she was then subjected to unusually hostile actions from both the assigned judiciary and her lawyer, specifically pertaining to evidence gathering, depositions, and submissions that also included delays, psychological and physically threatening harassment, and negligence through omission, misrepresentation, or removal of evidence.

Varughese was to be assigned a lawyer to brief and present this case before the appellate panel. The assigned lawyers were incompetent or had various conflict of interests, but the second circuit clerk made no effort to ensure that capable and formidable legal counsel is assigned to Varughese v. Mount Sinai Medical Center

3

et al. 12-cv-8812, likely by design. Varughese, now appeals the district court's decision, before this court of appeals, despite many challenges, including that of proceeding as a pro se appellant without any legal assistance.

<u>STATEMENT OF FACTS</u>

Dr. Leena Varughese, who has practiced medicine competently and without any question as to her judgment on providing patient care or her professionalism. Varughese has remained in good standing with New York State through multiple and repeated investigations where the goal was to find some wrongdoing on her part to marginalize Varughese. Varughese is a competent physician and if not for the termination of her employment and the pre- and post-termination retaliatory actions against her and her career that have compounded over the years, Dr. Varughese would be a formidable force in her field of Anatomic and Clinical Pathology that is rife with many egregious problems affecting public health and welfare. Your honor would have never heard of Dr. Varughese in these courts because she would have developed herself further into an independent and formidable Pathologist and medical professional representing the interests of the public health and her patients, rather than engaged in fighting the systems that are attacking her because she is so capable and formidable. If one were to tally the costs of this litigation to the Defendants honestly, it must be more than tens of

millions of dollars and rising as it is expensive when Varughese remains a formidable force to be reckoned with, a fact which is proven beyond any doubt.

In this case, the Defendants made various false allegations, used these made up ridiculous trumped up charges, and when all of that failed, they had removed or destroyed evidence to cover up for their extremely impermissible systems and illegal activities. The Defendant Institution has been so exposed for their actual illegal conduct, they have already made public statements attesting to discrimination and failures at an institutional level. Obviously, discrimination and retaliation have been institutionalized as their normative culture by none other than themselves because it benefits them monetarily. My complaint, a lawsuit by a five foot two inches tall woman of Indian National Origin has forced the organization to unhappily and angrily change course and admit to their illegal conduct. However, the Defendants remain closely tied to their misdirected anger and ensuing retaliation against me, the person responsible for exposing their unlawful conduct against personnel and paying students, which has been unfortunately emboldened by Judges McMahon and Francis!

The extent of the retaliation and discrimination was and is so horrifying that I have lived in terror during a significant period of my employment from my employer and their proxies and this terror continues into present day. This legal situation has challenged me to understand them and their activities as much as

5

possible but also to go public to protect myself both physically and psychologically from the harm of their blatant falsehoods and defamation of me.

The current system is so rigged against the professional career and civil rights of a minority woman of color that I discovered early on that there was no support of me from the status quo of lawyers and systems designed specifically to not afford any protection for me from unlawful activities against me and my rights. I discovered that even when I paid for legal services or asked for help, response was: 1) bleed me dry of any money like my former lawyer Ronald Wronko did and who did not advocate me to the fullest extent of the law, and he even sabotaged the case, 2) was to humiliate me and blackmail me when I sought help that included many actors including Accreditation Council of Graduate Medical Education to uninvolved employers and their proxies, 3) to take advantage of me to leverage my case and my good record for personal advantages, here my former attorney comes to mind again (he has apparently since my case become much wealthier despite an admitted and long record of abusing his clients). The cost of all of these activities is in the millions of dollars. The truth that belies these facts is that the independent professional mind and work of an individual woman of color advocating for herself and her patients like Varughese has still is a singular horror to white men who see themselves as masters of this universe to make all decisions and at their will only. Boo!

The systematic abuse against me is stunning given that the value of a medical degree to whites and in any circumstance is well over a million dollars, without even considering any other facts. The conspiracy of current status quo to cheapen the value of the medical and professional degrees when held by people of color is a tragedy that is born into professional fields, our shared systems, and the larger democracy through ongoing systematic abuses such that I nor the second circuit literally could not find any minority people of color owned, controlled, or represented law firm serving the civil rights interests of the majority of us filling these complaints about violations of our civil rights by whites and white owned and run corporations!

## SUMMARY OF ARGUMENT

There is abundant direct and indirect evidence supporting Dr. Varughese's claims. I encourage the court to examine the submissions made in support of each claim in Dr. Varughese's filing against the motion for Summary Judgement that included documents, privilege logs and records of audiotaped conversations. It is clear Judge McMahon took the law into her hands disregarding thousands of documents supporting Dr. Varughese's claims. Dr. Varughese has been unemployed for many years and burdened with a quarter of a million dollars of debt with no prospect of employment. The last six years of unemployment has cost Dr. Varughese at least two million dollars altogether. Despite numerous applications

for employment to complete her training and other positions for which she is qualified, she has been denied employment without just cause. It is evident that the retaliation and blacklisting by Mount Sinai Medical Center in New York have led to irreparable damage to Dr. Varughese's career for years on end. Dr. Varughese has been cleared of wrongdoing by the New York State Board of Medical Examiners after multiple investigations initiated by retaliatory complaints against Dr. Varughese by Mount Sinai Medical Center in New York. Dr. Varughese currently has an active NY medical license but cannot find employment due to ongoing retaliation.

Rather than facilitate Dr. Varughese's transfer to another employer or protect her reputation and industrious professional record, the Defendants engaged in character assassination to enrich itself and to protect Mount Sinai Medical Center's reputation that is already dirt, at the expense of the plaintiff's career, reputation, and well-being. The federal court headed by Judge McMahon and Magistrate facilitated this and served as useful tools for the super rich and their various schemes. If the evidence in Varughese v. Mount Sinai Medical Center et al., 12-cv-8812 is examined and viewed in the light most favorable to the plaintiff, there unquestionably exists sufficient and numerous descriptive and a great illustration of the illegal discriminatory and retaliatory actions against Dr. Varughese by the Defendants. The Defendant Institution, Mount Sinai Medical Center/Mount Sinai Hospital (currently the expanded Mount Sinai Health System) should have

provided Dr. Varughese's actual records of employment where she to her knowledge had completed over 3+ years of her four-year residency program in Anatomic and Clinical Pathology. Instead, the White Defendant organization with it's who is who of elite New York Jewish society, and it's leadership has repeatedly failed to do so, and they have not only for very long threatened and attacked Dr. Varughese, but they have also ensured that they can malign and retaliate against Dr. Varughese with the explicit approval of the Federal Judges Colleen McMahon and James C Francis IV by paying off the court. Meanwhile, Dr. Varughese who has incurred education loans and worked diligently in her profession is marginalized with no hope of employment despite attempts to obtain jobs for which she would be the most qualified, competent, and capable applicant. There is no prospect of bankruptcy relief for Varughese because these loans are education loans. Mount Sinai Medical Center et al. has in actuality ended the promising professional life and future of a bright young woman immigrant who was educated in United States systems to be a medical doctor.

Nonetheless, the racist, sexist government of the United States and the wealthy elites it serves to the exclusion of her citizens has become such a problem. Mount Sinai Medical Center has colluded with the public's bastion of law and order to eliminate the personal well-being and security of Dr. Varughese, which is unconstitutional and unacceptable as a matter of principle and law. The ramifications of the court's egregious actions have been preserved in the record as

9

a warning to future litigants, especially of minority groups, that justice cannot be found within the so-called "justice" system and especially within the Southern District of New York where the wealthy and corrupt have all the advantages and benefits and appoint known poor actors to the bench to serve their interests. The court has brazenly functioned as the proxy for the multi-billion dollar defendant institution that is funded significantly by common tax trusts such as Medicare, Medicaid, and National Institute of Health science grants, to enact and expand its perverse brand of court sanctioned discrimination, retaliation and character assassination by white professional class against minority professionals like Dr. Leena Varughese. Mount Sinai Medical Center has always been besieged by scandals and horrifying conduct at every level from the CEO to the doctors to the staff that span from fraud and racketeering to deviant sexual criminal conduct to ongoing record of extreme disparity in the workplace against minorities but of relevance to Varughese v. Mount Sinai Medical Center et al 12-cv-8812 is that the Defendant institution has itself admitted to institutionalized discriminatory and retaliatory conduct towards medical students and physicians since Varughese's filing of her blockbuster lawsuit.

## **Counts 1, 2, 5, 6, 9, 10, 16 and 18 (Gender and Race /National Origin Discrimination under Title VII, the NYCHRL, the NYHRL, and 42 U.S.C. 1981).**

The court mistakenly claimed that the appointment of McCash to the chief resident in July 2010 was discriminatory to Dr. Varughese. Dr. Varughese never made this claim. In the instance where Dr. Jordan was promoted over Dr. Varughese to Chief Resident, the court ignores the fact that Dr. Jordan, a white woman, was the junior resident only in her second year of the four-year residency program. Jordan was promoted over Dr. Varughese after Dr. Varughese had voiced complaints of discrimination, retaliation, harassment, and unfair treatment towards Varughese in incidents where Jordan was directly implicated on multiple occasions along with McCash. The record in this case, including the various and ever changing so-called privilege logs of communications and work-product of the Defendant Institution, clearly demonstrates Dr. Jordan conspired with department leadership and legal counsel to interact with and write emails harassing Dr. Varughese in a discriminatory and retaliatory fashion. Dr. Varughese made the legally relevant and legally protected inference that she was being marginalized and discriminated on the basis of her gender, race and national origin of India, and her protected legal activity. The Defendants used an unprofessional and a less competent junior white female doctor, Adrienne Jordan. Jordan was promoted precisely to intimidate, harass, discriminate and retaliate against Dr. Varughese as a proxy for the white men at Mount Sinai Medical Center. This is how discrimination and retaliation are given an artificially neutral appearance at the White run and white-privileged institutions.

11

As far as the altercation with McCash, the court mistakenly states that a Dr. Goldfarb had a standing instruction (p.77 of McMahon written summary judgment) that a resident on duty was to examine all slides submitted from her surgeries. There are no slides to speak of here. There are surgical breast specimens submitted by physicians. There is no proof the specimen in question was sent by a Dr. Goldfarb or that there was a standing instruction that residents must process cases from Goldfarb, in fact, as Dr. Varughese and other residents testified in extensive depositions regarding this that for lengthy time periods, resident doctors were not allowed to process Goldfarb specimens at all (these specimens were processed separately in a second private Pathology Laboratory).

Dr. Varughese has submitted evidence that male physicians per her observations were treated differently meaning with respect and preferentially with regards to their ability to disregard their duties and professionalism, and male doctors were given privileges in numerous instances while Varughese was not and attacked for no legitimate reason whatsoever. Dr. Varughese also submitted evidence that Dr. Jaffer another Indian woman was treated poorly by McCash. McCash had demonstrated a pattern of harassing Dr. Varughese, a junior female resident, and other minority female doctors. Dr. Melissa Pessin stated in her deposition Dr. McCash has a white appearance and McCash is squarely outside of Dr. Varughese's protected classes. Dr. Kruti Maniar was an Indian woman co-chief

12

resident with McCash, but she clearly played no significant role in department affairs and had no intimate contacts with department leadership or legal counsel as McCash and Jordan did, as evidenced by numerous emails and privilege logs. The circumstantial proof of gender and national origin or race discrimination is not insignificant.

<u>*The December 21, 2010 Academic Advisement*</u>

The December 21, 2010, Academic Advisement clearly constituted an adverse employment action as it was the proximate cause for Dr. Varughese's employment termination and provided the pretext for further harassment and retaliation. Dr. McCash was not disciplined in any formal manner even after admitting wrongdoing and allegedly apologizing to Human Resources. Also, McCash and Jordan were not punished in any way for even drinking alcohol on hospital grounds during work hours, which was a clear violation of hospital policy and a danger to patients and other residents, as both Jordan and McCash admitted to doing so during duty, the latter while at work as a chief resident. There was a holiday party sponsored with food provided by the staff (specifically, the histology crew) on the day of the altercation and it is unclear if McCash had been drinking which could have contributed to his erratic behavior. Dr. Varughese was the whistleblower regarding drinking activities, and hospital policies were changed to stop drinking activities on hospital premises. It goes without saying that Dr.

Varughese was never offered an apology by McCash nor adequate measures were taken to prevent McCash and Jordan from continually disrupting Varughese's professional duties to her patients and her professional education. In fact, it was only in discovery and through the extensive evidence submitted by Varughese does the court fully see the chain of events that actually transpired to which even Dr. Varughese was not aware of during her employment with the Defendant Institution nor to the very grave and severe dangers facing her and her well-being in the literal sense of what professionals or any employee would consider clear and present danger.

The "disparate treatment" applied toward Dr. Varughese following this incident and her complaints of discrimination clearly constitute discriminatory and retaliatory actions. The court claims McCash is not a comparator but the identical twin comparator theory has been debunked not only as a legitimate legal theory but also as law. McCash was a Chief Resident whose duties were administrative largely, and they did not extend to Dr. Varughese's performance of her grossing duties as a senior resident. It was Dr. Varughese's ultimate responsibility to handle specimens appropriately as a senior resident in consultation with the Attending Pathologist physician, which Dr. Varughese managed much better than her other resident doctors. The record clearly shows the grossing room was something of a disaster area or "zoo" with numerous missing specimens and cases that were

14

mishandled by many residents. Dr. Varughese never had these problems as she was meticulous in her work habits and took ultimate responsibility for patient care which all her Attending Physicians recognized and as evidenced by her performance evaluations.

Numerous depositions of former Chief residents confirm that their duties are administrative and themselves providing coverage in the case of gaps. Chief residents are not empowered to supervise senior residents in the performance of grossing patient care duties as the Attending Physician, and senior residents are ultimately responsible for diagnosing the cases. McCash is an obvious comparator as Dr. Varughese was not subordinate to his fantastical whims or imagined superiority. The institutional cover up for McCash and Jordan as evidenced by privilege logs showing collusion with counsel further validate the white supremacist underpinnings of the institution. McCash clearly overstepped his bounds in precipitating conflicts with Varughese, a minority woman doctor in her final month of one of the most arduous rotations of her residency training years. McCash basically assaulted Dr. Varughese in that he came into Dr. Varughese's physical space shouting loudly and threatening physical violence through his actions. Dr. Varughese diffused the situation and left the area to get help. Claims that Dr. Varughese was "erratic" or had incoherent speech or had been insubordinate are whole cloth fabrications by the defendants to justify their

discriminatory and retaliatory actions. There was only one witness that saw McCash's initial altercation interaction with Dr. Varughese along with Varughese, who was a person of color, who was not interviewed according to submitted discovery documents. Only witnesses who saw the interaction when Dr. Varughese returned to the gross room after leaving to get help were interviewed, and it is clear that Jordan is the arm of the white supremacists at the Defendant Institution who has materially benefitted from attacking Varughese. The court regularly claims that Dr. Varughese's underlying claim of discrimination based on abundant direct and circumstantial evidence is a conclusory assertion. The animus of the court toward Dr. Varughese and her claims of discrimination has been proved beyond a shadow of a doubt, so it has spent nearly the whole of the litigation attempting to undermine and subvert the facts for the Defendant Institution.

*Referral to the PWC*

The referral of Dr. Varughese, a woman of Indian national origin, to Physician Wellness Committee (PWC) for psychological and toxicologic screening under threat of employment termination was a discriminatory and retaliatory act. McCash, a white-appearing male, and Jordan, a white female, who may have been under the influence of illicit and illegal substances at work because of their conduct and records acquired during discovery were not referred to PWC for evaluation when their behavior constitute statutory assault. Dr. Figur in deposition revealed

16

the PWC to be a subset of the board of trustees that included legal counsel and numerous individual billionaires from the board of trustees! It is evident beyond any doubt that the PWC is utilized as a retaliatory and punitive arm of the institution, and the referral to PWC was made to discredit Dr. Varughese.

Dr. Fersh, a young psychiatrist, made allegations apparently arriving at diagnosis after one meeting with Dr. Varughese about Dr. Varughese which Dr. Varughese was not allowed to see or rebut or discuss! First, Fersh's allegations are not only dangerous and coerced by her personal motivations to climb the ladder at Defendant Institution by engaging in their illegal activities but shows the unprofessional and unethical conduct of many of these white doctors at Defendant Institution who are merely performing for their billionaire masters rather than adhering to their Hippocratic oath and professionalism. Dr. Varughese stood up against the retaliatory and obviously discriminatory and criminally motivated actions undertaken to discredit and malign her (the referral and marring of the professional reputation of female doctors using psychiatry have become a common practice at Defendant Institution per the evidence on record). The conflicts of interest alone in mandating a psychological evaluation of Varughese after what was many months of harassment and abuse by the Defendant Institution and it's proxies was further retaliation and their need to silence and discredit Dr. Varughese, the one doctor who had whistle-blown and made protected legal complaints on

numerous occasions.

Irrespective of the fact that Dr. Varughese is an exemplary doctor and in no way was into illicit substances unlike the organizations own touted white doctor proxies, particularly their white doctors who have come under suspicion as they were involved in the controlled substance related death of a friend and/or associate with drugs that apparently require administration. Dr. Varughese took the mandated toxicology tests which were negative for any drugs of abuse. The court states here again "Varughese has presented only her own conclusory allegations." The court is saying that the use of numerous facts, the direct evidence of disparate treatment, circumstantial evidence and sound logic to further a hypothesis is a "conclusory allegation." In any case, the Defendants themselves has already admitted to their own discriminatory and retaliatory conduct that is in need of correction. It's not only fair but logical to credit Dr. Varughese for leading the struggle and this charge to change the destructive vile and dangerous "politics of the institution" as also admitted by Defendant Firpo-Betancourt. It is evident that any jury especially a jury including persons of color would not discount obvious facts and must as a matter of law rule in Dr. Varughese's favor. The discriminatory animus of the Court and the Defendants are self-apparent and evidence of their retaliatory motives against Dr. Varughese, a professional woman doctor of color who does not fit into the white construct in any way.

18

*The July 15, 2011 Final Warning*

It is clear Mount Sinai Medical Center was retaliating against Dr.Varughese. The placement of Varughese on "final warning" was beyond the pale and illegal conduct, giving only credence to the retaliatory and discriminatory motivations of the racist sexist and retaliating Defendants and Defendant Institution. Varughese was hounded by Administration including Dr. Scott Barnett into various meetings in May and June 2011 that were laden with threats and intimidation. They attempted to coopt some staff to accuse Varughese of wrongdoing again that included McCash, and other employees who are known to cause widespread problems for the Department with poor patient care practices. Dr. Varughese had filed complaints of discrimination and retaliation at this point. Mount Sinai Medical Center was seeking to terminate Dr. Varughese's employment and required administrative sanction to do so, especially given the fact that Varughese was an exemplary professional with a promising career in her field (despite, all of the negative and harassing activities of the Defendants and their proxies).

The Defendants bet on Dr. Varughese being forced to accept blame for the altercation promulgated by McCash in the self-reflection essay. Again, Dr. Varughese refused to be pressured by her oppressors, as only a true professional is capable of doing so. Please review Dr. Varughese's reflection essays that document the altercation and subsequent events. Privilege logs indicate the hospital

leadership worked in association with legal counsel in a conspiratorial fashion to justify terminating Dr. Varughese's employment when Dr. Varughese herself identified that she played only the role of a victim and had never done anything to harm anyone or ever done anything unethical or unprofessional in her career and at Mount Sinai Medical Center.

The Final Warning Letter document created a laundry list of common infractions that no resident could be fired for nor was even cited for, not to mention that much of the allegations were trumped up falsifications. In fact, such was the case that many of the alleged infractions were never even addressed with Dr. Varughese showing again the arbitrary and irrelevant nature of these allegations to Varughese's work or performance as a professional doctor. Dr. Varughese also had legal representatives who were to handle Mount Sinai Medical Center and the Defendants directly.

The court mistakenly states that Dr. Varughese had an extensive history of insubordination and absenteeism (p90) but conveniently ignores the actual evidence of actual absenteeism and insubordination by the various white doctors such as Jordan, Chepovetsky, Hecthman, and the Haitian doctor who was Chief Resident, Morency who like Jordan and others have also alleged to be their minds, and others such as Azar, Martinez, and Roman etc etc. Dr. Varughese's unwillingness to take blame for a white-Filipino male who is "white enough" and

20

who engaged in extremely harassing unprofessional, abusive conduct on more than one occasion to assault Dr. Varughese leads to allegations of unprofessionalism, absenteeism etc is the definition of retaliation, racism, sexism, and hostile workplace.

Also, Dr. Varughese only took sick days as needed and the limit on the sicks days per year was never exceeded or abused by Varughese in any way. There is no record of absenteeism. The court states McCash accepted counseling and apologized, but this is not verifiable. The Defendants and the Court allege all at once that McCash and the Defendants Institutions and the Defendants are responsible but attempt to keep blaming Varughese, which is the heights of ludicrousness and corruption. McCash's purported apology is evidence of culpability for the altercation which the Defendants have all recognized and admitted as problematic. McCash never apologized to Dr. Varughese or was made to write a reflection or subject to any disciplinary action despite the fact that he was made their proxy and administrative arm and as such, legally he is much more responsible and liable for abusive conduct such as the repeat incidents of harassment directed the minority female doctor Varughese. The refusal to punish this conduct made Defendants and Defendant Institution responsible, and the ongoing attack on Varughese is evidence of their collective racist sexist and retaliatory actions. Dr. Varughese also provided numerous examples of resident

21

misconduct that were entertained as normative conduct for professionals by Defendants. There is abundant evidence indicating that resident doctors outside of Dr. Varughese's protected class engaged in proven patterns of misconduct for years were treated with kid gloves and covered up for so that they can go on to practice pathology. There is no evidence that the allegations against Dr. Varughese are true or that her purported infractions were worse than her colleague's actual ongoing issues. The disparate discriminatory treatment is evidenced extensively in the submissions to the court.

## *The September 21, 2011 Termination*

Dr. Varughese's employment termination followed numerous protected complaints at this point. The court claims Dr. Varughese "rifled" through an administrator's files when left alone because Dr.Varughese looked at a single folder that looked exactly like hers was on a desk in front of her. Shema Patel, an administrator who worked directly with CEO Kenneth Davis, MD, and Dean Dennis Charney MD had left the room, and the door was open. Apparently, the allegation is that the Defendant Institution is careless, in it's ever expanding incompetence in every way, was also leaving top secret folders that look like one used by Dr. Varughese unattended. Well, who here was born yesterday? Again, Dr. Varughese has testified that she gleaned that the folder did not belong to her and closed it.

22

The court states Dr. Varughese demonstrated disastrous performance on Dr. Najfeld's rotation but ignores the abundant information showing this rotation was used to harass and retaliate against Dr. Varughese by departmental proxies for the hospital. Dr. Najfeld is a cytogeneticist, not technically a pathologist, being as it is, she is a post-doctorate degree holder, not a professional medical doctor. Based on the discovery, Najfeld dutifully carried out instructions to label Dr. Varughese as unsatisfactory in this rotation despite Dr. Varughese having fulfilled all the requirements including a final presentation and exit interview. Per Dr. Varughese, she was not informed of any performance deficiencies on the hands-off largely observer-ship two weeks of cytogenetics rotation. Dr. Varughese was not even informed of her evaluation of the rotation as required per Defendants own rules in person.

It was only after the termination of Varughese's employment; the Defendants alleged that Varughese did not satisfactorily complete a two-week rotation satisfactorily after 3+ years of completing rotations successfully, including (you won't guess this one) the other two weeks of cytogenetics rotation that Varughese has already done! Examination of the privilege logs reveals Najfeld was contacted by hospital's in-house legal counsel and the department leadership such as the incompetent Firpo-Betancourt and Cordon-Cardo to malign and harass Varughese to make her workplace hostile to a young talented professional. Najfeld herself was

not even interested in working with Varughese and refused to communicate in a reasonable fashion with Varughese during the earlier two weeks of her rotation, and during the latter two weeks, Najfeld blankly claimed she was too involved with grants and other personal activities precluding any in interest in working with Varughese. Dr. Lento has admitted this was a minor two-week rotation that no resident could be fired for and at worst they could repeat it. In fact, many residents skipped this rotation altogether because they could not tolerate the nonsensical Najfeld and her whims, including her overly harassing conduct towards male resident doctors and her bankers (per discovery).

Dr. Varughese was routinely discriminated against, retaliated against, harassed, and along with these efforts to terminate her employment through the construction of ever evolving grievances and challenges intended to make her fail. No other resident doctor would under any circumstances be subject to such unprofessional conduct, and none were. Dr. Varughese is one of the strongest patient advocates who is a whistleblower and had already made numerous protected complaints (the Government is aware, Varughese is certain of that). The hospital's maligning of a well-received scientific case study and presentation to her peers clearly demonstrate their efforts to terminate Dr. Varughese's employment with ever farcical and provably false fabrications. The feckless Defendants provided a list alleged wrongdoing by Dr. Varughese that not only make for a primae facie case

for discrimination but actually is so idiotic that Varughese's case was won years ago for all intents and purposes of the law. The evidence and articulation of the facts to the lower courts have made these pretext even more apparent to the larger public and the corrupted judiciary.

Dr. Varughese is represented as a perpetual thorn in the side of institutions because they are racists sexist retaliatory organizations. The court is only right if it acknowledges that Dr. Varughese was insubordinate to the discriminatory and retaliatory actions of Mount Sinai Medical Center and to the court itself represented by Judge McMahon who has acted as a shill and proxy arm of billionaires. A decision against Plaintiffs in motion for summary judgment by Defendants used to be only brought forward by good lawyers but today, in the post-truth world of moneyed defendants and extensive financial interests, it has become a cursory matter which ultimately prevents meritorious claims from being heard by the jury or being settled equitably.      As in Varughese v. Mount Sinai Medical Center et al, the courts participate in character assassination, scrub the record, and serve merely as simple a tool for elites and their nefarious interests to control and monopolize the professional labor force. These actions will undermine the cornerstone of a healthy democracy by attacking minorities in the professional class like Dr. Varughese to prevent her success. There is sufficient and satisfactory legitimate evidence on which a reasonable jury would invariably rule in favor to

the Plaintiff on cause of actions against the Defendants for discrimination and retaliation based on animus of her protected legal activity, race, national origin, and gender.

## Counts 3, 7, 8, and 11 (Hostile Work Environment under Title VII, NYHRL and NYCHRL)

Efforts to constructively terminate Dr. Varughese's employment are clearly seen throughout the evidence presented. Numerous emails are written by hospital proxies advocating employment termination after Dr. Varughese had made protected complaints. Privilege logs demonstrate chief residents and department leadership were in contact with hospital administrators and legal counsel. These efforts took place after McCash and Jordan initiated altercations with Varughese (she sought assistance to stop this pattern of conduct) but instead it led to a series of Institutional attacks on Varughese that inexorably changed the terms and conditions of Dr. Varughese's employment. Residents outside Dr. Varughese's protected class were not subject to similar treatment when proven misconduct was discovered but instead Dr. Varughese was repeatedly targeted. Even when Jordan did not follow instructions from Defendants, Varughese was targeted.

Dr. Varughese was placed under a microscope and picked apart for imaginary infractions of the deluded perverse racist, sexist criminal minds such that no other residents outside of Varughese's protected classes such as of being white and

women or being white and male were similarly disciplined while they committed far more serious and egregious violations. Also, it was discovered in the course of the litigation that Varughese's coworkers were in fact directly involved in the death of young resident physician at another program. This is controversial and important because the parents of the young woman had brought forwards litigation and found the circumstances of her death suspect. Being as it was, the people I know in Pathology informed me at the time repeatedly of a perfect murder having been committed.

In any case, there were other instances of abuse of drugs and death recorded using the substances that were implicated in this woman's death which was found to be cases of homicide. The only response from the Defendants were to gloss over the implications for the involved residents, they opted against pursuing a toxicology screening and testing of the two white females residents involved in this incident, or subjecting them to a PWC screening especially because these same residents had and continued to exhibit egregious poor conduct at work, all of which in retrospect made sense in light of possible abuse of drugs.        In addition, the Defendants were so protective of their white resident doctors that it was inconceivable that Dr. Varughese should even merely speak to Jordan per the Defendants. Dr. Varughese has discovered in discovery that the deviant Defendants planned out these subversive double standards and these were all promoted by the

Defendants and the leadership of the Department of Pathology with overt quid pro quo benefits to Jordan, McCash, and Morency, meaning a direct link existed for their malicious racist sexist and retaliatory conduct that effectively ruined Dr. Varughese's work environment, with personal gains for these unethical but useful idiots on their payroll.

Dr. Varughese obtained the help of lawyers and other professionals who labeled the Defendants and Defendants Institution as a first rate Nazi white supremacist and sexist organization for minorities and women (especially women affiliated and supportive of minorities as seen with Dr. Tamara Kalir have been inexplicably maligned by this court as well, not just them being subjected to the Defendants harassment of them, such as apparent threats to be psychologically examined and such). As an aside, the Defendant Institution is headed by two of the most disreputable disgusting psychiatrists, Dr. Dennis Charney and Dr. Kenneth Davis who are known to be enabled by the Board of Trustees to abuse others like some Nazi Third Reich doctors, and widely considered to be involved in covert governmental experiments to abuse the public. In any case, billionaire Board of Trustees who want to doctor everybody because they have money use these abhorrent and stupid shills as their arm. The public should have no confidence in the Defendant Institution and their intention beyond consolidating and collecting as much of the federal dollars for themselves.

Dr. Varughese's race and gender cannot be divorced from the situation and be dismissed as incidental. Dr. Lento, Dr. Cordon-Cardo, and Dr. Firpo-Betancourt as male physicians participated in changing the terms of Dr. Varughese's employment precisely because of Dr. Varughese's race and gender in retaliation for her protected complaints. Dr. Varughese employment was terminated using these extensive and sick ideology and behavioral pattern covered over by pre-text. What's a multibillion-dollar institution to do if they can't routinely harass, threaten, and intimidate minority doctors? Varughese was dragged into meeting after meeting, intimidated, threatened, stalked, under surveillance, even as the organization was failing with their program and inability to control their white residents and make them do their work. Varughese was attacked and harassed out of her work after completing all the most arduous aspect of her residency using the most farcical allegations by a Defendant Institution because they are rotten to the core.

The work environment was so terrifying for Dr. Varughese, where she merely to step out for lunch or to use the restroom or to leave for home using the stairs, these were all noted and considered suspect by those stalking her. If any professional is subjected to this sort of harassment, they too will find it threatening and changing the conditions of their work. Varughese's personal workspace was repeatedly ransacked and her patient cases were disrupted by the Defendants routinely in

29

attempts to make her fail. The totality of the circumstances clearly indicates Dr. Varughese was subject to a hostile work environment as a woman of Indian descent who had made protected complaints.

## **Counts 4, 8 and 12 (Retaliation under Title VII, NYHRL and NYCHRL)**

Dr. Varughese made protected complaints before, during and after her placement on "Academic Advisement" which constituted a disciplinary action, irrespective of the Defendants desperate attempts to distance themselves from this illegal retaliation by changing semantics. Dr. Varughese surmised incidents with McCash were due to her race and gender in numerous conversations including with Human Resources, Dr. Lento and Dr. Alan Schiller at this time. Rule 56.1 statements by a plaintiff who experienced the events in question cannot be deemed conclusory assertions as Judge McMahon claims, rather it must be taken at face value. It was abundantly clear that Dr. Varughese was being treated differently based on the fact that she is an Indian woman doctor. The Academic Advisement fundamentally changed the terms of Dr. Varughese's contract with the hospital. Dr. Varughese was asked to sign the Academic advisement, and she refused because it was fabrications, retaliatory, and illegal. The actions were taken against her will and the law, as a licensed professional doctor, before any investigation into the incident had even been conducted. This was not a continuous adverse job action insofar as it was the proximate cause for Dr. Varughese's employment termination.

Dr. Varughese according to the House Staff Manual which is part of her contract is allowed to challenge any adverse employment action, and Dr. Varughese was not allowed this opportunity in violation of her contract. The Academic Advisement appeared completely informal with no organized meeting schedule or goal other than to place the boot of the institution upon the neck of Dr. Varughese. There were no formalized procedures, and there was no formalized disciplinary process at this time. Some residents were given Academic Advisement with far less onerous terms while some residents were "verbally" reprimanded without even any documented record. McCash admitted to initiating the altercation and being out of line for example and was simply talked to, and he was not even under much professional protection at the time, only carrying a limited permit to practice medicine.

Dr. Varughese was not allowed to know anything about McCash's admitted culpability, and she was pressured into taking blame for McCash and Jordan which she refused to do. Judge McMahon's false view of Academic Advisement as a gradual adverse employment action that arose before Dr. Varughese engaged in any protected activity is convenient to allege that an inference of retaliation does not arise based on the evidence. Academic Advisement was a severe disciplinary action without any formalized structure that was instituted against Dr. Varughese without her consent in violation of her contract. Dr. Varughese made protected complaints before and after the illegal administration of Academic Advisement.

31

Judge McMahon also mischaracterizes Slattery (Slattery F.3d at 95) in that many distinct adverse employment actions were taken against Dr. Varughese again without any formalized structure or reason, other than to retaliated against her.

Dr. Varughese made numerous protected complaints before each of these actions. These measures cannot be deemed analogous to the "progressive discipline" procedure described in Slattery in any case. The Defendant also vehemently attacked Dr. Varughese for her account of the events as outlined in her reflections of the altercation with McCash. They subsequently engaged in further retaliation against Varughese, rather than accept what Varughese had reiterated innumerable times of her being attacked, discriminated against, and retaliated against by the Defendants. The Defendants were set to see Dr. Varughese fail and terminate her employment after she had done the most arduous work related to her residency program in Anatomic and Clinical Pathology.

## Count 13 (Tortious Interference with Business Relations).

Judge McMahon states Dr. Varughese provided nothing other than her conclusory assertion to prove that Mount Sinai "acted for a wrongful purpose or used dishonest, unfair or improper" means when it refused to provide RWJ Hospital and other residency programs with necessary documents to allow Varughese to obtain employment. Dr. Fyfe of Robert Wood Johnson Medical School spoke to Dr. Firpo, Dr. Schiller, and Dr. Lento per her claims. She informed

Varughese that she was not to hire Varughese and allege that she is to drop any "lawsuit" related to their discriminatory conduct, which at that time was an EEOC complaint that Varughese expected to be resolved. Dr. Fyfe told this to Dr. Varughese, and these actions of the Defendants are illegal and they have continued to engage in activities to blackmail Dr. Varughese whether it was to drop her EEOC filings or attacking her as a Defendant Institution by fabricating nonsensical documents to destroy Varughese's professional reputation, despite no evidence to support their assertions. By Judge McMahon's logic, the very filing of a lawsuit would be deemed a conclusory assertion. There is abundant direct and indirect circumstantial evidence supporting Dr. Varughese, despite key spoliation and extensive attempts to marginalize Varughese. The evidence that is available should be viewed in the light most favorable to the plaintiff, and the conclusion is of extensive years long tortious interference consistent with the hateful, illegal animus of the Defendants. Please review Dr. Varughese's submission against the motion for summary judgment about each of the claims including this one.

## Count 14 (Defamation and Defamation Per Se)

Evidence revealed in discovery showed numerous acts of defamation aside from the Summative Evaluation. Most importantly false claims were circulated by the individually named Defendants that Dr. Varughese presence posed a physical threat to Jordan. Firpo-Betancourt even planned to exploit Dr. Varughese's

workplace presence to exploit these fabricated allegations, a plan that apparently all but came crashing down when Dr. Varughese did not come into work. Rather than immediately terminate the employment of Firpo-Betancourt, a widely known to be sexual harasser and fraud, the Defendant Institution further empowered this perverted racist, sexist huckster. Examination of the record, clearly shows that defamatory claims were used to precipitate Dr. Varughese's employment termination. Based on one false allegation after another, Defendants had managed to destroy the life of a young woman doctor after making sure that they took advantage of her when she was performing the most difficult tasks associated with her work and benefitting the Defendant Institution. Review the original Dr. Varughese's submission against the motion for summary judgement with regard to each of the claims including this one.

## **Count 15 and 16 (Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing)**

Judge McMahon provides a laundry list of infractions that Dr. Varughese disputed to state "she was terminated for cause." Again, Judge McMahon ignores the totality of Dr. Varughese's submission and ignores the numerous ways in which Dr. Varughese's contract was violated. The evidence clearly demonstrates efforts sanctioned at the highest levels of the institution to silence, discredit and defame Dr. Varughese. Numerous emails show efforts to constructively or directly

34

terminate Dr. Varughese's employment. Judge McMahon acts as a hitman for the defendants and again woefully fails to view the evidence in the light most favorable to the plaintiff. Please review Dr. Varughese's submission against the motion for summary judgment about each of the claims including breach of contract.

## Count 17 (Whistleblower Retaliation)

After reviewing the evidence, it's clear the defendants viewed Dr. Varughese whistleblowing as a threat to the institution. Dr. Varughese has since the first day of her residency worked on building up her professional acumen and credibility through diligent professional work and education, despite the pathetic workplace and her incompetent supervisory personnel. Again, review of email chains and privilege logs demonstrate high levels of involvement by the institutional leadership and legal counsel. All of the disciplinary actions were based on an incident that McCash had taken culpability for after having attacked Varughese on more than one occasion, and he continued until his successful completion of the four-year residency program.

Numerous lists were compiled by department leadership, legal counsel, and Chief Residents to try and justify Dr. Varughese's employment termination. The evidence clearly demonstrates efforts to constructively terminate Dr. Varughese's employment and establish pre-textual reasons for direct employment termination.

Other residents outside Dr. Varughese's protected class were not targeted in this manner. Following Dr. Varughese's whistleblowing, Dr. Jordan was promoted to Chief Resident and worked with legal counsel per email chain evidence to further harass and terminate Dr. Varughese's employment. Judge McMahon and Magistrate Francis has worked tirelessly for the Defendants against the Plaintiff in critical aspects of the litigation by limiting discovering and protecting the racist, sexist retaliatory Defendants and illegal, unprofessional lawyering.

## Count 19 (Family and Medical Leave Act)

Judge McMahon states Dr. Varughese ignored orders and reported to work anyway. This is not true. Dr. Varughese was given conflicting information by a variety of people who were not her employers or immediate supervisors. When asked by Paul Johnson or Firpo-Betancourt to give doctor's note to return to work, Dr. Varughese complied with the request. At this point, efforts to bar Dr. Varughese from the workplace and constructively terminate her employment were in full swing. Dr. Jordan, a white woman who is known to be working with Mount Sinai legal counsel, stated that she was physically afraid for herself in emails and in verified notes from Human Resources of Dr. Varughese. The Defendants also informed other coworkers that Dr. Varughese she would not be returning to work. Dr. Varughese was unaware of this smear campaign and these various allegations being fabricated and circulated by the Defendants. Varughese's lawyers were also

not contacted despite what were seriously and threatening allegations made against Varughese. When Dr. Varughese complied with request for a doctor's note, which despite numerous residents being off work consistently were not asked to provide, when Varughese returned to work, the institution had a full meltdown as the level of incompetence at Defendant Institution will never cease to amaze me as it is run by the likes described above. The evidence submitted in the case has proved that the lists of reasons were created by chief residents and administrators to justify employment termination irrespective of the fact that every professional understands on first glance that these are merely retaliatory and covering up for their real racist, sexist animus.

Dr. Varughese saw the effects and experienced the tragedy of the Defendants collective illegal and deplorable conduct. Varughese was and is prevented from obtaining employment by these same actors and their proxies. Many years later, the extreme level of malevolence and acrimony against her is confirmed as born out of impermissible motivations based on Varughese's race, gender, and National origin and in retaliation for protected legal activity that is the cornerstone of human dignity and freedom in the United States. Dr. Varughese's colleagues have claimed that the Defendants are not just evil but they are the devil themselves, which based on the evidence is no longer an arguable fact. Dr. Varughese, like Judge McMahon's clerk, had initially written up in her decision on the motion to dismiss,

had explicitly stated without any ifs ands or buts, that Varughese must never return to work for Defendants as Varughese was treated badly with disrespect, disregard that highlight the racism, sexism, and national origin animus of the Defendants. Dr. Varughese's request for FMLA was used as one of the reasons for employment termination; this is a clear violation of FMLA law as a request for FMLA cannot be used as a reason to fire an employee. Please examine Dr. Varughese's filings against the defendants throughout the record including the Summary Judgement motion, the complaint, as well as the irrational and illogical favorable decisions made for the Defendants that were clearly against the interest of law and justice

## STATEMENT OF RELIEF SOUGHT

The court must grant relief from the Defendants unlawful and discriminatory conduct. It must include the ability to present the case to a jury through the appointment of competent pro bono trial lawyers either of the Department of Justice or an independent law firm with resources to withstand the attacks and intimidation of the moneyed and corrupt Defendants.

In the meantime, immediate injunctive relief that demands the removal of individual Defendants from the Medicare-funded residency program along with the Defendant Institution's eligibility to remain funded must be challenged. Any and all defamatory statements made against Varughese must be retracted. Defendants have to be barred from engaging in any further tortious interference with

Varughese's employment prospects and Anatomic and Clinical Pathology Board Exam eligibility as they have done for the past five years.

## CONCLUSION

Dr. Varughese has courageously and successfully brought attention, as any good advocate would, to the egregious violations of her rights and liberties. Varughese has advocated for the extended protection of human rights, dignity, and anti-discrimination of the people in professional class like herself who work in largely white owned and operated organizations such as with the Defendant Institution. Professional employees of color, women, and other protected classes of people must be protected from the insidious corporate agenda of corruption and discrimination that has been extensively documented. There is no legitimate business interest that is served with blacklisting and marginalizing of women like Dr. Varughese, as she has experienced in the past eight years. Professionals with integrity, self-respect, true professionalism, and adherence to moral and ethical standard for treating others as Varughese has exemplified represent the framework of a functioning democracy and society, not just her workplace.

Dr. Varughese's case is obviously being used by white elite status quo, such as those represented by Defendant Institution, to obtain illegal and specific control over the ideas and professional freedom of minority and women professionals, their value, and their labor. Varughese worked in a system that is completely

owned, trusteed, and provide monetary benefits to those in the so-called "White" construct discriminatorily by marginalizing women and people of color selectively. The role of the government is to balance this imbalance of power to prevent what has occurred to Dr. Varughese and provide legal relief to remedy this matter of the taking away of her rights and property and the disenfranchisement of her, her good record and professional education and work. This court has a duty to Varughese and other people to color to follow the actual laws and statutes intended to protect minorities from discrimination and retaliation, as well as to nullify the looming threat over the heads of young women of color, all women, and people of color professionals like Varughese posed by Defendants illegal conduct.

## CERTIFICATE OF COMPLIANCE

I, Dr. Leena Varughese, certify that this brief contains 14,000 words of less.

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Varughese, L _____ v.

Mount Sinai Medical Center

et al

**CERTIFICATE OF SERVICE**
Docket Number: 15-1328

I, Leena Varughese, M.D. _____, hereby certify under penalty of perjury that on
           (name)
November 30, 2016 _____, I served a copy of Appellant brief _____
    (date)

_____
(list all documents)

by (select all applicable)*    CM/ECF

- [ ] United States Mail
- [ ] Federal Express
- [ ] Overnight Mail
- [ ] Facsimile
- [x] E-mail
- [ ] Hand delivery

on the following parties (complete all information and add additional pages as necessary):

| Rory McEvoy | 405 Lexington Avenue | NY | NY | 10174 |
|-------------|---------------------|------|-------|----------|
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

November 30, 2016 _____      /s/ Leena Varughese _____
    Today's Date                             Signature

*If different methods of service have been used on different parties, please indicate on a separate page, the type of service used for each respective party.

Certificate of Service Form