# 15-1328-cv

## United States Court of Appeals

*for the*

## Second Circuit

M.D. LEENA VARUGHESE,

*Plaintiff-Appellant,*

– v. –

PATRICK LENTO, M.D., M.D. IRA J. BLEIWEISS, JOHN DOES, 1-10,
MOUNT SINAI MEDICAL CENTER, M.D. ADOLFO FIRPO,
M.D. CARLOS CORDON-CARDO,

*Defendants-Appellees,*

ABC CORPORATION, INC., 1-10,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

RORY J. MCEVOY
AKERMAN LLP
*Attorneys for Defendants-Appellees*
666 Fifth Avenue, 20th Floor
New York, New York 10103
(212) 880-3800

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, counsel for Defendant-Appellee Mount Sinai Medical Center states that it does not have a parent corporation and that no publicly-held corporation owns 10% or more of its stock.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................. i

PRELIMINARY STATEMENT ....................................................1

STATEMENT OF SUBJECT MATTER AND APPELLATE
    JURISDICTION ...................................................................3

COUNTERSTATEMENT OF ISSUES ........................................4

COUNTERSTATEMENT OF FACTS .........................................6

    A. Plaintiff's Residency At Mount Sinai ..................................6

    B. Plaintiff's December 2010 Altercation With  McCash And Resulting
       Academic Advisement.....................................................7

    C. After Receiving The Academic Advisement, Plaintiff Complains
       About The Incident With McCash....................................8

    D. In February 2011, Plaintiff Is Referred To The Physician Wellness
       Committee.......................................................................9

    E. Plaintiff Fails To Comply With The Academic Advisement .........9

    F. In April 2011, Plaintiff Complains About Gender Discrimination For
       The First Time ...............................................................10

    G. Plaintiff Is Disrespectful To The New Chair Of The Department ...............10

    H. In July 2011, Plaintiff Receives A Final Warning For Lack of
       Professionalism.............................................................11

    I. Plaintiff Continues To Behave Unprofessionally.........................11

       1. Plaintiff Fails To Do A Presentation During Her Cytogenetics
          Rotation ...................................................................11

       2. Plaintiff Refuses To Accept An Assignment From Chief Resident
          Jordan.....................................................................12

       3. Plaintiff Demands To Change Her Elective Rotation ..............................13

       4. Plaintiff Fails To Comply With The Conference Attendance
          Requirements..........................................................13

       5. Plaintiff Ignores Firpo's Instructions Not To Return To Work
          Pending Medical Clearance....................................14

    J. Plaintiff Is Summarily Suspended And Terminated......................15

K. The Department Issues Plaintiff A Summative Evaluation............................16

SUMMARY OF ARGUMENT ..................................................................................17

STANDARD OF REVIEW ......................................................................................18

ARGUMENT ...........................................................................................................20

POINT I. PLAINTIFF'S COMMON LAW, SECTION 740, FMLA, AND
SECTION 1981 CLAIMS ARE NOT PROPERLY BEFORE
THE COURT BECAUSE THEY WERE DISMISSED BY
THIS COURT FOR LACKING AN ARGUABLE BASIS IN
LAW OR IN FACT ..................................................................................20

POINT II. THE DISTRICT COURT'S DECISION GRANTING
SUMMARY JUDGMENT TO MOUNT SINAI AND THE
INDIVIDUAL DEFENDANTS SHOULD BE AFFIRMED
BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL
FACT REGARDING PLAINTIFF'S GENDER AND
RACE/NATIONAL ORIGIN DISCRIMINATION CLAIMS...........21

A. Applicable Legal Standard ............................................................21

B. The District Court Correctly Found That Mount Sinai And The
Individual Defendants Did Not Discriminate Against Plaintiff Based
On Her Gender Or Race/National Origin ........................................22

1. Failure To Promote Plaintiff To Chief Resident In 2010 And 2011.......23

2. December 8, 2010 Incident.....................................................25

3. Academic Advisement.............................................................26

4. Referral To The PWC..............................................................28

5. The July 15, 2011 Final Warning ............................................29

6. The Fall 2011 Refusal To Transfer .........................................29

7. The September 21, 2011 Termination......................................30

POINT III. THE DISTRICT COURT'S DECISION GRANTING
SUMMARY JUDGMENT TO MOUNT SINAI AND THE
INDIVIDUAL DEFENDANTS SHOULD BE AFFIRMED
BECAUSE PLAINTIFF IS UNABLE TO ESTABLISH A
CLAIM FOR RETALIATION.......................................................32

A. Applicable Legal Standard ............................................................32

B.  The District Court Correctly Found That There Was No Evidence
That Mount Sinai And The Individual Defendants Retaliated Against
Plaintiff For Engaging In Protected Activity....................................................32

POINT IV. THE DISTRICT COURT'S DECISION GRANTING
SUMMARY JUDGMENT TO MOUNT SINAI AND THE
INDIVIDUAL DEFENDANTS SHOULD BE AFFIRMED
BECAUSE PLAINTIFF IS UNABLE TO ESTABLISH A
CLAIM FOR HOSTILE WORK ENVIRONMENT..........................35

A.  Applicable Legal Standards............................................................35

B.  The District Court's Determination That There Was No Evidence Of
Discrimination Should Be Affirmed.................................................35

CONCLUSION ...................................................................37

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
   239 F.3d 456 (2d Cir. 2001) ..............................................................................18

*Dawson v. Bumble & Bumble*,
   398 F. 3d 211 (2d Cir. 2005) .............................................................................21

*Deebs v. Alstom Transp., Inc.*,
   346 F. App'x 654 (2d Cir. 2009) .......................................................................18

*E.E.O.C. v. Bloomberg L.P.*,
   967 F. Supp. 2d 816 (S.D.N.Y. 2013) .........................................................24, 25

*Fincher v. Depository Trust & Clearing Corp.*,
   604 F.3d 712 (2d Cir. 2010) ..............................................................................32

*Forgione v. City of New York*,
   11 Civ. 5248, 2012 WL 4049832 (E.D.N.Y. Sept. 13, 2012) ...........................28

*Holcomb v. Iona Coll.*,
   521 F. 3d 130 (2d Cir. 2008) .............................................................................21

*Kwan v. Andalex Group, LLC*
   737 F. 3d 834 (2d Cir. 2013) .............................................................................32

*LoSacco v. City of Middletown*,
   71 F. 3d 883 (2d Cir. 1995) ..............................................................................30

*Lozada v. Delta Airlines, Inc.*,
   No. 13 Civ. 7388, 2014 WL 2738529 (S.D.N.Y. June 17, 2014) ...............18, 19

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)....................................................................................21, 22

*Melman v. Montefiore Med. Ctr.*,
   946 N.Y.S. 2d 27 (N.Y. App. Div. 1st Dep't 2012) ....................................22, 33

*Mihalik v. Credit Agricole Cheuvreux N. Am.*,
   715 F.3d 102 (2d Cir. 2013) ..............................................................................35

*Paladino v. Potter*,
    347 F. App'x 613 (2d Cir. 2009) ........................................................................18

*Risco v. McHugh*,
    868 F. Supp. 2d 75 (S.D.N.Y. 2012) ...........................................................33, 34

*Rogers v. City of New York*,
    359 F. App'x 201 (2d Cir. 2009) ........................................................................30

*Schiano v. Quality Payroll Sys. Inc.*,
    445 F. 3d 597 (2d Cir. 2006) ..............................................................................35

*Slattery v. Swiss Reinsurance Am. Corp.*,
    248 F. 3d 87 (2d Cir. 2001) ................................................................................33

*Sotomayor v. City of New York*,
    862 F. Supp. 2d 266 (E.D.N.Y. 2012) ...............................................................22

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. 502 (1993)......................................................................................21, 22

*White v. Fuji Photo Film USA, Inc.*,
    434 F. Supp. 2d 144 (S.D.N.Y. 2006) ...............................................................35

*Yu v. New York City Hous. Dev. Corp.*,
    494 F. App'x 122 (2d Cir. 2012) .......................................................................23

## Statutes

Civil Rights Act of 1964 Title VII, 42 U.S.C. § 2000e, et seq..................................3

N.Y. Admin. Code § 8-107 .........................................................................................3

N.Y. Exec. Law § 296 .................................................................................................3

## Rules

Fed. R. Civ. P. 56(c)..................................................................................................18

## PRELIMINARY STATEMENT

Plaintiff-Appellant Dr. Leena Varughese ("Plaintiff" or "Varughese"), a former resident in Mount Sinai Medical Center's ("Mount Sinai") Department of Pathology (the "Department"), was terminated from the Department's Residency Program (the "Program") in September 2011 for unprofessional behavior. In December 2010, Plaintiff was placed on Academic Advisement because of her misconduct in connection with a verbal altercation with the Chief Resident. In July 2011, Varughese received a Final Warning for failing to comply with the requirements of the Academic Advisement. In September 2011, Plaintiff was terminated because, after receiving the Final Warning, she engaged in a series of unprofessional acts culminating in her looking through confidential files in the office of the Program Administrator.

Nevertheless, on appeal, Plaintiff claims that she was terminated because she is a woman of Indian descent and in retaliation for complaining about discrimination. Varughese also claims that she was the victim of a hostile work environment. Plaintiff makes these claims even though the record evidence establishes, beyond any doubt, that Mount Sinai disciplined and terminated her, not because of her gender or ethnicity, but because of her unprofessional and inappropriate behavior, much of which she admitted to. Nor is there any evidence that Plaintiff was retaliated against for engaging in protected activity. To the

contrary, the record shows that the alleged retaliatory actions were part of a course of conduct that began well before Varughese ever complained about discrimination. Finally, the District Court correctly granted summary judgment to Mount Sinai and the Individual Defendants on Plaintiff's hostile work environment claims because there is no evidence that the events that Varughese claims form the basis of her hostile environment claim occurred in circumstances giving rise to an inference of discrimination. Rather, the evidence merely revealed that when Plaintiff acted out, there were consequences, and that she happened to be a woman of Indian descent.

Unable to cite to any evidence that shows that there is a genuine issue of material fact on any of her claims (because there is none), Plaintiff spends the most of her brief advancing various conspiracy theories and complaining about her former counsel, the justice system, the United States government, billionaires, white men, "elite New York Jewish society," as well as Mount Sinai. The record evidence fully supports the District Court's thorough and well-reasoned 129-page decision dismissing all of Plaintiff's claims. Varughese's conclusory assertions, without citation to the record or to any authority, are insufficient, as a matter of law, to avoid summary judgment. Accordingly, Judge McMahon's decision granting summary judgment to Mount Sinai should be affirmed.

## STATEMENT OF SUBJECT MATTER AND APPELLATE
## JURISDICTION

The District Court had subject matter jurisdiction over Mount Sinai, Dr.

Patrick Lento ("Lento"), Dr. Adolfo Firpo ("Firpo"), Dr. Carlos Cordon-Cardo

("Cordon-Cardo"), and Dr. Ira J. Bleiweiss ("Bleiweiss") (collectively the

"Individual Defendants") under Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e, *et seq.* ("Title VII"); and exercised supplemental jurisdiction over

the claims under the New York State Human Rights Law, N.Y. Exec. Law § 296

(the "NYSHRL") and the New York City Human Rights Law, N.Y. Admin. Code

§ 8-107 (the "NYCHRL").

## COUNTERSTATEMENT OF ISSUES

1.      Whether Plaintiff can appeal her common law claims for tortious interference with business relations, defamation, defamation per se, breach of contract, and breach of covenant of good faith and fair dealing, her Section 740 whistleblower retaliation claim, her Family and Medical Leave Act ("FMLA") claim and her Section 1981 claim even though this Court dismissed these claims for lacking an arguable basis in law or in fact and denied Plaintiff's motion for reconsideration of that dismissal?

2.      Whether the District Court's decision dismissing Plaintiff's gender and race/national origin discrimination claims should be affirmed because the evidence showed that Mount Sinai and the Individual Defendants disciplined and terminated Plaintiff, not because of her sex or ethnicity, but because of her own admitted unprofessional behavior?

3.      Whether the District Court's decision dismissing Plaintiff's retaliation claim should be affirmed because the adverse actions that occurred after Plaintiff's first complained about discrimination in April 2011 were part of a course of conduct that began well before she engaged in protected activity and, as a result, were not retaliatory, and whether, in any event, there is no causal connection between Plaintiff's April 2011 complaint and any materially adverse action taken against her after that date, including her termination?

4.      Whether the District Court's decision dismissing Plaintiff's hostile work environment claims should be affirmed because Plaintiff presented no evidence that her workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment?

## COUNTERSTATEMENT OF FACTS

**A.    Plaintiff's Residency At Mount Sinai**

Plaintiff was a resident in the Department from July 1, 2008 until September 21, 2011.  (AA 42-43, 123, 178-84, 271-76.)  In July 2008, the Department Chair was Dr. Alan Schiller ("Schiller") and the Program Director was Lento.  (AA 46-47.)  From December 2010 to April 2011, Dr. Melissa Pessin ("Pessin") served as the interim Department Chair.  (AA 46.)  On April 1, 2011, Cordon-Cardo became the Chair.  (AA 76.)  Shema Patel ("Patel"), a woman of Indian descent, was Department Administrator beginning in June 2011.  (AA 121; AA 497, ¶2.)  On July 1, 2011, Firpo became the Director of Pathology Education and the Pathology Residency Training Program.  (AA 346-349.)  In the academic year 2010-2011, the Chief Residents were Dr. Samuel McCash ("McCash"), an Asian Pacific Islander of Filipino descent, and Dr. Kruti Maniar ("Maniar"), a women of Indian descent. (AA 45; AA 431, ¶¶2-3, 6; AA 456, ¶2.)  In 2011 to 2012, the Chief Residents were Dr. Adrienne Jordan ("Jordan") and Dr. Elizabeth Morency.  (AA 45.)

During the time that Plaintiff was at Mount Sinai, there was one other female resident of Indian descent besides Varughese (Maniar) and three female fellows of Indian descent enrolled in the fellowship program in the Department. (AA 468-69, ¶2; AA 472.)  All of the female residents and fellows of Indian descent in the Department graduated except for Varughese.  *Id.*  In addition, there

were a number of women of Indian descent on the Department's faculty, including:
(i) Dr. Lakshmi Ramanthan; (ii) Dr. Anupna Nayak; and (iii) Dr. Shabnam Jaffer
("Jaffer"). (AA 463, ¶4; AA 495-96, ¶2-4; AA 498-99, ¶¶2-4.) These individuals
had long and successful careers at Mount Sinai. (AA 463, ¶4; AA 495, ¶1; AA
498, ¶1.)

**B.      Plaintiff's December 2010 Altercation With
          McCash And Resulting Academic Advisement**

On December 8, 2010, McCash told Plaintiff to gross all of the breast
specimens, but, instead, Plaintiff gave some of that work to a moonlighter to do for
her. (AA 43-44, 49; AA 332-33, 340-41.) After McCash asked her to explain her
behavior, she became verbally abusive to, and in front of, other residents
(including Jordan), a medical student, and an attending physician. (AA 50, 52, 71,
206-07; AA 332-33, 340-41.) In addition, she shouted outside of the office of
Bleiweiss, an attending pathologist, and burst into his office while he was on the
phone. (AA 51; AA 325.) The next day, a specimen that Plaintiff said she grossed
was found undone at her work station. (AA 71, 206-07; AA 332-33, 340-41.)

The Department conducted an investigation and concluded that Plaintiff
used profanity, was out of control, and followed Jordan out of the laboratory and
yelled at her. (AA 71, 206-07.) Plaintiff does not dispute that she raised her voice
and swore. At her deposition, when asked whether "you may have told him to

'fuck off'?," Plaintiff responded "I may have." (AA 52.) During the investigation, Varughese was told to report to Maniar rather than McCash. (AA 64.)

As a result of this incident, Plaintiff was placed on Academic Advisement on December 21, 2010. (AA 71, 206-07.) Academic Advisement puts residents on notice that they must improve their performance or they will face discipline. (AA 361-62.) The Academic Advisement required Plaintiff to: (i) meet with the Program Director or Department Chair every 3-4 weeks for continued assessment and advisement; (ii) continue to perform her duties under the guidance of the Chief Residents, Department faculty, and the Program Director; (iii) prepare a self-reflection essay by January 18, 2011 about the incident and how she could have handled it differently; and (iv) read a book about professionalism. She was also expected to improve in the areas of professionalism and patient care or be subject to discipline, up to and including termination. (AA 71, 206-07.)

**C.    After Receiving The Academic Advisement, Plaintiff
        Complains About The Incident With McCash**

On December 23, 2010, Plaintiff emailed Lento, Pessin, and Caryn Tiger-Paillex ("Tiger"), the Director of Mount Sinai School of Medicine's Human Resources Department, a letter setting forth her account of the incident with McCash. (AA 54-55, 65, 186-87, 195-96.) She claimed that McCash shouted at her, but did not complain about discrimination. *Id.* After receiving the letter, Tiger investigated Plaintiff's allegations, but was unable to corroborate them. (AA

8

60, 189; AA 425.) On April 5, 2011, Tiger met with Plaintiff to inform her that the

investigation had concluded and she was unable to substantiate her claims. (AA

58-59.) Nevertheless, she told her that she would continue to report to Maniar,

instead of McCash. (AA 56-57; AA 428.) Tiger sent Plaintiff a letter on April 11,

2011 confirming that she was unable to substantiate her claims. (AA 60, 189.)

### D.   In February 2011, Plaintiff Is Referred To The Physician Wellness Committee

As a result of Plaintiff's behavior during the December 2010 incident with

McCash, Pessin referred her to the Physician Wellness Committee ("PWC") in

February 2011. (AA 70; AA 331.) The PWC assists physicians suspected of being

impaired for behavioral, psychiatric, or physical reasons. (AA 69, 198-204; AA

330-31.) A physician who has been referred to the PWC must meet and cooperate

with the PWC. (AA 69, 198-204; AA 333.) Dr. Arthur Figur ("Figur"), the

Associate Medical Director of Mount Sinai who oversaw the PWC, conducted his

own investigation of the December 2010 Incident and found that the referral was

appropriate. (AA 334-35.)

### E.   Plaintiff Fails To Comply With The Academic Advisement

Plaintiff failed to fulfill the requirements of the Academic Advisement. For

example, she was required to submit the self-reflection essay by January 18, 2011,

but failed to do so until March 30, 2011. (AA 72-75, 209-14.) In addition to being

two and half months late, the essay was non-compliant because it did not

9

acknowledge anything that Plaintiff could have done differently. (AA 74-75, 209-14.) Instead, she simply recounted her version of the events and accepted no responsibility for the altercation with McCash. *Id.* Plaintiff also failed to meet with Lento or read the book on professionalism, as required. (AA 79, 224-26.)

**F.     In April 2011, Plaintiff Complains About
          Gender Discrimination For The First Time**

On April 25, 2011, Plaintiff emailed Tiger and claimed for the first time that McCash discriminated against her because of her gender. (AA 62, 191.) Tiger asked to meet with her so that she could begin to investigate the complaint, but Plaintiff refused because she thought it would be a "waste of time." (AA 63-64, 193.)

**G.     Plaintiff Is Disrespectful To The New Chair Of The Department**

After Cordon-Cardo became the Chair in April 2011, he decided to give Plaintiff a fresh start. (AA 309.) On May 3, 2011, he met with her and asked her to re-write the essay and read the book on professionalism. (AA 77.) He scheduled another meeting for May 24 and asked Plaintiff to complete the essay before the meeting. (AA 76-77, 216, 218-19.) Plaintiff did not submit the essay in advance and instead, brought it with her to the meeting. (AA 78.) The second essay was even less reflective than the first, continued to focus on her version of the events, and failed to discuss how Plaintiff could have done things differently.

(AA 78, 221-22.) When Cordon-Cardo asked her if she read the book, she did not answer and tossed the book onto the table in his general direction. (AA 309-10.)

## H. In July 2011, Plaintiff Receives A Final Warning For Lack of Professionalism

In July 2011, the Department issued Plaintiff a Final Warning as a result of her failure to comply with the terms of the Academic Advisement and her behavior at the May 24 meeting with Cordon-Cardo. She was warned that any recurrence of unprofessional behavior may result in further disciplinary action, up to and including termination. (AA 79, 224-26.) In addition, Plaintiff was informed that during the next three months, she was required to meet biweekly with Firpo to review her performance. *Id.*

## I. Plaintiff Continues To Behave Unprofessionally

### 1. Plaintiff Fails To Do A Presentation During Her Cytogenetics Rotation

From August 1 to August 12, 2011, Plaintiff did a rotation in the Tumor Cytogenetics Lab and was supervised by Dr. Vesna Najfeld ("Najfeld"). (AA 80; AA 434, ¶2.) Plaintiff failed to complete many of the assignments during this rotation and exhibited unprofessional behavior. For example, Najfeld assigned Plaintiff a case to present on August 9 at 9:00 a.m. and asked her to provide the slides in advance so that she could review them. (AA 80-81; AA 434, ¶4.) Plaintiff sent Najfeld the presentation at 4:18 p.m. the day before it was to be

presented.  (AA 81; AA 434, ¶4, 439.)  Najfeld emailed her back five minutes later

stating that there were major problems with the presentation and asked Plaintiff to

call her "a.s.a.p."  (AA 82-83, 228-30; AA 434-35, ¶¶5-7, 441-45.)  More than an

hour later, Plaintiff called Najfeld.  (AA 84.)  Najfeld asked her to come to her

office to work on the presentation, but Plaintiff told her that she had gone home

and would not come back.  (AA 84-85; AA 435, ¶8.)  Najfeld then directed

Plaintiff to inform the faculty and residents that the presentation was canceled.

(AA 85; AA 435, ¶8.)  Plaintiff failed to notify the attendees and as a result, they

showed up for the cancelled presentation.  (AA 87; AA 436, ¶¶11-12.)  Najfeld

describes the experience of working with Plaintiff as her "worst teaching

experience" during the thirty-three years she has worked at Mount Sinai.  (AA 437,

¶19.)

### 2. Plaintiff Refuses To Accept An Assignment From Chief Resident Jordan

On August 4, 2011, Plaintiff refused a coverage assignment from Jordan

claiming to be injured.  (AA 88-90, 238-243.)  She also refused to provide a

doctor's note.  (AA 90.)  On August 12, 2011, Plaintiff ignored emails from Jordan

and pages from Lento regarding coverage needed for a sick resident.  (AA 99, 245-

47; AA 320.)  Since Plaintiff was on Najfeld's rotation at this time, Lento called

Najfeld who confirmed that Plaintiff was in the laboratory.  (AA 99, 245-47; AA

320; AA 437, ¶17.)  He was only able to reach Plaintiff after he asked Najfeld to

12

bring Plaintiff to the phone. (AA 100; AA 437, ¶17.) Although Lento instructed Plaintiff to call Jordan, she did not do so. (AA 100; AA 363, 400-02.)

### 3. Plaintiff Demands To Change Her Elective Rotation

Residents may request changes to their elective rotations before the schedule is finalized, but after the schedule is set, changes are not permitted absent extenuating circumstances. (AA 364.) In August 2011, after the schedule was finalized, Plaintiff asked Firpo if she could change her elective from GI Pathology to Dermatopathology. (AA 101.) Firpo attempted to accommodate her request, but it was too late to get another resident to cover Plaintiff's scheduled rotation. (AA 123, 271-76; AA 365.) On September 7, 2011, Firpo denied Plaintiff's request. (AA 102; AA 364-66.) Upon learning that her request was denied, Plaintiff confronted Firpo and made several false accusations, including, that Firpo had committed to change her rotation and another resident had agreed to switch rotations with her (which that resident denied). (AA 103-04; AA 366, 404-08; AA 463, ¶2, 465-67.) Unwilling to accept Firpo's decision, Plaintiff continued to email him challenging his decision. (AA 123, 271-76; AA 463, ¶2, 465-67.)

### 4. Plaintiff Fails To Comply With The Conference Attendance Requirements

To comply with the guidelines set by the Accreditation Council for Graduate Medical Education, the Department requires residents to attend at least 80% of morning educational conferences. (AA 105, 249.) In August 2011, Plaintiff was

13

notified that she was failing to meet this requirement and in keeping with the Department's policy for residents who did not meet the requirement, she would be required to make a presentation on a topic she missed at a morning conference on September 14. (AA 104-06, 249, 251-56.) To avoid her obligation to present, Plaintiff called out sick on September 13 and 14. (AA 111.) The presentation was rescheduled for September 15. (AA 112.) On September 15, Plaintiff arrived late to the conference and then left after only fifteen minutes without giving her lecture. (AA 112-13, 123, 271-76.)

### 5. Plaintiff Ignores Firpo's Instructions Not To Return To Work Pending Medical Clearance

On September 15, 2011, Firpo and Patel met with Varughese to discuss her failure to give the lecture. (AA 113-14.) At the meeting, Firpo became concerned about Plaintiff's well-being. Plaintiff told them that she could not take it anymore, felt overwhelmed, and needed to take a leave of absence. (AA 113-14; AA 367-71.) After Firpo consulted with the Office of Graduate Medical Education and the Human Resources Department, he and Patel met with Plaintiff to inform her of the procedure for requesting a leave of absence. (AA 113-16, 266, 268; AA 369-71.) On September 16, 2011, Firpo emailed Plaintiff and told her not to return to work until her leave status was resolved. (AA 116, 268.) Plaintiff disregarded Firpo's clear written directive and came to work on September 16 and September 19. (AA 116-18.)

14

On September 20, 2011, Patel saw Plaintiff at a Starbucks near the hospital. Patel knew that Plaintiff was not supposed to be at work and asked her where she was going. When Plaintiff told Patel she was on her way to work, Patel told Plaintiff to come to her office. (AA 119; AA 419.) After they arrived at Patel's office, Patel was called away for a few minutes to assist a visitor. (AA 120; AA 420.) When Patel returned, she saw Plaintiff looking through the contents of files on her desk labeled "Pathology." (AA 120- 21, 123, 271-76; AA 421.) When Patel told Plaintiff that the files were confidential and asked her to explain herself, Plaintiff replied, "what's the big deal?" and told her to "chill out." (AA 123, 271-76; AA 421.) At her deposition, Plaintiff admitted that she had looked through a file on Patel's desk. (AA 120-21.)

## J.   **Plaintiff Is Summarily Suspended And Terminated**

On September 21, 2011, Plaintiff was summarily suspended and terminated for her ongoing poor performance and unprofessional conduct, including, her behavior on Najfeld's rotation, her refusal to accept assignments from Jordan, her behavior in connection with her request to change her elective rotation, her failure to comply with the conference attendance requirements, her refusal to follow Firpo's instructions not to return to work pending medical clearance, and the incident in Patel's office. (AA 123, 271-76.)

15

Plaintiff appealed and a hearing was held before the Mount Sinai School of Medicine House Staff Affairs Committee (the "Committee"). (AA 124, 278.) The Committee was comprised of five senior faculty and two senior residents from departments other than Pathology. (AA 125, 280-87.) On December 2, 2011, the Committee unanimously upheld the decision to terminate Plaintiff. *Id.*

Plaintiff appealed the Committee's decision. (AA 126, 289-301.) The Appeal Committee was made up of three senior faculty members, including the Chief Medical Officer and the Senior Vice President for Medical Affairs. *Id.* On March 7, 2012, the Appeal Committee unanimously upheld the Committee's decision. *Id.*

## K.    The Department Issues Plaintiff A Summative Evaluation

On March 8, 2012, the Department issued Plaintiff's summative evaluation, a standard document that is required for every resident who leaves the Program for any reason. (AA 127, 303-04.) Based on her performance, Plaintiff was rated as "unsatisfactory" in three of the six categories (patient care, professional, and interpersonal and communication skills). *Id.* She was assessed as not ready to practice without supervision. *Id.* In addition, the summative evaluation stated that Plaintiff had been promising in her first two years but, in her third year, her supervisors had found her performance to be "substandard" and "unsatisfactory." *Id.*

16

## <u>SUMMARY OF ARGUMENT</u>

Plaintiff attempts to appeal her common law claims for tortious interference with business relations, defamation, defamation per se, breach of contract, and breach of covenant of good faith and fair dealing, her Section 740 whistleblower retaliation claim, her FMLA, and her Section 1981 claim, despite the fact that this Court ruled (twice) that she could not purse these claims on appeal. Accordingly, these claims are not properly before the Court.

In her appeal, Plaintiff presents no evidence to refute the District Court's well-reasoned findings based on a thorough review of the record evidence that: (i) Mount Sinai and the Individual Defendants terminated Plaintiff for the legitimate, non-discriminatory reason that her behavior was unprofessional and inappropriate and there was no evidence of discrimination; (ii) the materially adverse actions that occurred after Plaintiff's complained about discrimination were not retaliatory because they were part of a course of conduct that began well before she engaged in protected activity; and (iii) there was no evidence that any of the events occurred in circumstances giving rise to an inference of discrimination as required for a hostile work environment claim. Instead, Plaintiff merely engages in *ad hominem* attacks on various individuals and institutions, and imagines unsubstantiated injustices that have been committed against her.

17

## STANDARD OF REVIEW

The Court of Appeals reviews a District Court's decision to grant or deny a motion for summary judgment *de novo*, "examining the facts in the light most favorable to the non-moving party and resolving all factual ambiguities in that party's favor." *Paladino v. Potter*, 347 F. App'x 613, 614 (2d Cir. 2009).

Summary judgment is appropriate where the record, including the pleadings, depositions, interrogatories, admissions, and affidavits, demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Although credibility issues cannot be decided on summary judgment, this Court and other courts in this Circuit have consistently held that, even in the discrimination context, self-serving testimony, by itself, is insufficient to avoid summary judgment. *See, e.g., Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) ("[T]he only evidence cited in plaintiffs' brief is their own self-serving testimony and… the plaintiffs have made no attempt…to square their own speculative, and subjective testimony with the hard evidence adduced during discovery. Such evidence is insufficient to defeat summary judgment.'") (internal quotations omitted); *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir. 2001) ("[S]ummary judgment may be appropriate even in the fact-intensive context of discrimination cases."); *Lozada v. Delta Airlines, Inc.*, No. 13 Civ. 7388, 2014 WL 2738529, at *5 (S.D.N.Y. June

17, 2014) ("Although the Court cannot resolve issues of credibility on summary judgment, [the plaintiff's] self-serving, incomplete, and inconsistent recollection is not sufficient to create a genuine dispute of fact in light of [the defendant's] documented evidence.").

# ARGUMENT

## POINT I.

### PLAINTIFF'S COMMON LAW, SECTION 740, FMLA, AND SECTION 1981 CLAIMS ARE NOT PROPERLY BEFORE THE COURT BECAUSE THEY WERE DISMISSED BY THIS COURT FOR LACKING AN ARGUABLE BASIS IN LAW OR IN FACT

On October 22, 2015, this Court entered an Order, which granted Plaintiff leave to proceed *in forma pauperis* to the extent that she was permitted to appeal her discrimination claims under Title VII, NYSHRL, and NYCHRL, but "[a]ll of appellant's other claims are DISMISSED because they lack an arguable basis in law or in fact." On November 5, 2015, Plaintiff filed a Motion for Consideration of the Court's dismissal of her other claims. This Court denied her motion on November 20, 2015.

Despite this Court's dismissal of Plaintiff's claims other than her Title VII, NYSHRL, and NYCHRL discrimination claims, she argues in her brief that the District Court should not have dismissed her common law claims for tortious interference with business relations, defamation, defamation per se, breach of contract, and breach of covenant of good faith and fair dealing, her Section 740 whistleblower retaliation claim, her FMLA claim and her Section 1981 claim. (App. Br. 38-44.) Pursuant to the Order, dated October 22, 2015, and this Court's denial of Varghese's Motion for Reconsideration of that Order, these claims are not properly before the Court.

20

## POINT II.

**THE DISTRICT COURT'S DECISION GRANTING SUMMARY JUDGMENT TO MOUNT SINAI AND THE INDIVIDUAL DEFENDANTS SHOULD BE AFFIRMED BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING PLAINTIFF'S GENDER AND RACE/NATIONAL ORIGIN DISCRIMINATION CLAIMS**

### A.   Applicable Legal Standard

Discrimination claims under Title VII, the NYSHRL, and the NYCHRL are analyzed under the familiar burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Holcomb v. Iona Coll.*, 521 F. 3d 130, 138 (2d Cir. 2008) (Title VII); *Dawson v. Bumble & Bumble*, 398 F. 3d 211, 216 (2d Cir. 2005) (NYSHRL and NYCHRL).  To establish a *prima facie* case of discrimination, a plaintiff must show that (i) she is a member of a protected class; (ii) her job performance was satisfactory; (iii) she suffered an adverse employment action; and (iv) the action occurred under conditions giving rise to an inference of discrimination.  *Holcomb v. Iona Coll.*, 521 F. 3d 130, 138 (2d Cir. 2008).  If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action.  *Id.*  Once the defendant provides such a reason, the burden shifts back to the plaintiff to provide evidence that the reason provided by the defendant was a pretext for discrimination.  *Id.*  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all

times with the plaintiff." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal quotations and citations omitted).

In addition, discrimination claims under the NYCHRL should only be dismissed at the summary judgment stage if the defendant can demonstrate that it is entitled to summary judgment under both *McDonnell Douglas* and the mixed motive framework. *See Melman v. Montefiore Med. Ctr.*, 946 N.Y.S. 2d 27, 30 (N.Y. App. Div. 1st Dep't 2012). Under the mixed motive theory, a plaintiff must show that the action was motivated at least in part by discrimination. *See id.* at 40. Although NYCHRL claims are construed more liberally than federal and state law discrimination claims, "a plaintiff must still link the adverse employment action to a discriminatory motivation." *Sotomayor v. City of New York*, 862 F. Supp. 2d 266, 258 (E.D.N.Y. 2012).

**B.**  **The District Court Correctly Found That Mount Sinai And The Individual Defendants Did Not Discriminate Against Plaintiff Based On Her Gender Or Race/National Origin**

Plaintiff alleged eight separate instances of discrimination: (i) the failure to promote her to Chief Resident in 2010; (ii) the failure to promote her to Chief Resident in 2011; (iii) the December 2010 incident with McCash; (iv) the Academic Advisement; (v) the referral to the PWC; (vi) the Final Warning; (vii) the fall 2011 denial of a transfer; and (viii) the termination. The District Court, in its well-reasoned decision, carefully considered and rejected each of these claims

finding that Mount Sinai and the Individual Defendants did not discriminate against Plaintiff based on her gender or race/national origin. Judge McMahon concluded that, "no reasonable juror could find Varughese to have overcome the overwhelming evidence that Defendants disciplined and terminated her, not because of her sex or ethnicity, but because of her own admitted behavior – behavior that her employer found unprofessional and inappropriate." (AA 622.) The record fully supports the District Court's decision. Rather than citing to any authority or record evidence showing that the District Court's erred in reaching this conclusion (because there is none), much of Plaintiff's brief does no more than complain about the various injustices that she believes (incorrectly) were committed against her.

### 1. Failure To Promote Plaintiff To Chief Resident In 2010 And 2011

To make out a *prima facie* case of discriminatory failure to promote, a plaintiff must show that: (i) she is a member of a protected class; (ii) she applied and was qualified for a job for which the employer was seeking applicants; (iii) she was rejected for the position; and (iv) either (a) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications or (b) the employer filled the position with a person outside the protected class who was similarly or less qualified than the plaintiff. *Yu v. New York City Hous. Dev. Corp.*, 494 F. App'x 122, 124-25, 125 n. 4 (2d Cir. 2012). A narrow exception to

the requirement that the plaintiff specifically apply for the position exists where a plaintiff can show that: (i) the vacancy at issue was not posted and (ii) she either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer. *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 856 (S.D.N.Y. 2013).

The District Court dismissed both of Plaintiff's failure to promote claims. (AA 600.) On appeal, Plaintiff only argues that she was discriminated against by not being promoted in 2011.[1] The District Court held that Mount Sinai and the Individual Defendants did not discriminate against Plaintiff by failing to promote her in 2011 because, even though Jordan was in her second year of residency while Plaintiff was in her third, (i) Plaintiff did not allege that she lacked knowledge of the position nor did she testify that she was even interested in the position and (ii) one of the three Chief Residents was an Indian woman. (AA 599.) Moreover, as the District Court correctly pointed out, at the time that Jordan was promoted, Plaintiff was on Academic Advisement, was the subject of complaints, and had been referred to the PWC. Jordan was not subject to any similar constraints and accordingly, was a better choice for Chief Resident. (AA 600.)

---

[1] Plaintiff claims that she never alleged that the failure to promote her in 2010 was discriminatory and thus, does not dispute the District Court's finding on this issue. (App. Br. 17.)

On appeal, Plaintiff argues that the District Court ignored the fact that Jordan was a junior resident, even though Judge McMahon explicitly addressed this issue. (App. Br. 17; AA 599-600.) Without citation to any evidence, Plaintiff speculates that Jordan was promoted in order to harass Plaintiff. (App. Br. 17.) Her speculation, suspicion and surmise is insufficient to create a genuine issue of material fact and avoid summary judgment.

## 2.    December 8, 2010 Incident

The District Court held that Plaintiff failed to make out a *prima facie* case of discrimination in connection with the December 8, 2010 incident with McCash because: (i) yelling at an employee is not an adverse action under the federal and state antidiscrimination laws and (ii) a single instance of being addressed publicly in an inappropriate fashion does not rise to the level of being treated worse in a non-trivial way under the NYCHRL. (AA 601-602.) *See E.E.O.C.*, 967 F. Supp. 2d at 873 (holding that under Title VII and the NYSHRL, "yelling at an employee…does not amount to an adverse action"). The District Court correctly found that even if she were able to make out a *prima facie* case under the NYCHRL, her claim would still fail because: (i) McCash had a legitimate, non-discriminatory reason for his behavior, specifically, Plaintiff's failure to follow direct instructions and (ii) the only evidence of discrimination offered by Plaintiff,

an email in which McCash wrote "work ethnic" rather than "work ethic," was obviously a typo and, therefore, was not discriminatory. (AA 603-05.)

On appeal, Plaintiff claims, without citation to any evidence, that there was no standing instruction that residents had to examine Dr. Goldfarb's slides. (App. Br. 18.) She also argues that there is evidence (although she cites to none) that McCash harassed other females despite the District Court's explicit finding, which is fully supported by the record, that "[t]here is no evidence that McCash had any problems working with other women, other people of Indian descent, or with women who were also of Indian descent." (App. Br. 18; AA 605.) Finally, Plaintiff claims that McCash is white (the significance of which, even if true, is unclear), even though, in fact, he is a Pacific Islander of Filipino descent, which the District Court correctly found. (AA 456, ¶2; AA 537.) These arguments, which are unsupported by the record, do nothing to undermine the District Court's finding that the December 8, 2010 incident is devoid of any evidence of discrimination under federal, state or city law.

### 3. **Academic Advisement**

The District Court rightly dismissed Varughese's claim that Mount Sinai and the Individual Defendants discriminated against her by placing her on Academic Advisement because: (i) Plaintiff's gross insubordination provided a legitimate, non-discriminatory reason for placing her on Academic Advisement; (ii) Mount

Sinai and the Individual Defendants' decision was based on at least five witnesses' complaints about Plaintiff; (iii) McCash is not similarly situated to Plaintiff because he was her supervisor, his behavior was not deemed to be as serious, and unlike Plaintiff, he acknowledged wrongdoing; and (iv) Schiller and McCash, whom Plaintiff alleges made discriminatory remarks, played no role in the decision to place her on Academic Advisement.  (AA 606-13.)  The record demonstrates that Plaintiff was placed on Academic Advisement solely based on her insubordinate behavior, and not because of her gender or race/national origin.

Plaintiff argues that McCash was not her supervisor because Chief Residents were not empowered to supervise senior residents in their grossing duties and as a result, McCash was not her superior.  (App. Br. 21.)  In addition, she claims that the allegations that she was erratic or insubordinate are "whole cloth fabrications." *Id.*  All of these arguments are unavailing.  The evidence supports the District Court's finding that McCash as the Chief Resident was Plaintiff's supervisor.  In addition, as the District Court  correctly found "hospital administrators had to weigh her word alone against the word of at least five witnesses (not including McCash or Jordan), all of whom attested that she was out of control.  Whether those witnesses were right is not the point."  (AA 608.)  Accordingly, the District Court's determination that Mount Sinai and the Individual Defendants did not

27

discriminate against Varughese by placing her on Academic Advisement should be affirmed.

### 4. <u>Referral To The PWC</u>

The District Court correctly found that Mount Sinai and the Individual Defendants did not discriminate against Plaintiff by referring her to the PWC because: (i) the referral was not materially adverse under federal law; (ii) there is no evidence that anyone similarly situated to Plaintiff was not referred to the PWC; and (iii) there is no evidence of discriminatory animus on the part of Pessin who made the referral or Figur who investigated to ensure that referral was proper. (AA 613-15.) *See Forgione v. City of New York*, 11 Civ. 5248, 2012 WL 4049832, at *5-6 (E.D.N.Y. Sept. 13, 2012) (holding that the plaintiff's "two referrals for psychological evaluation do not amount to adverse action under the Americans with Disabilities Act").

On appeal, Plaintiff argues that McCash and Jordan, who are outside of her protected class, were not referred to the PWC for being under the influence of illegal substances at work and therefore, her referral to the PWC was discriminatory. (App. Br. 22.) Plaintiff makes the conclusory allegation that the "discriminatory animus of…Mount Sinai and the Individual Defendants [is] self-apparent" but fails to cite to any evidence of discrimination in the record (App. Br. 24.) Her argument regarding McCash and Jordan fails because the record shows

that: (i) one bottle of alcohol was found in the residents' room, but Mount Sinai was unable to determine to whom the alcohol belonged and (ii) no resident was found to have been drinking alcohol during work hours.  (AA 336-37; AA 426-27.)

### 5. The July 15, 2011 Final Warning

The District Court dismissed Plaintiff's claim that Mount Sinai and the Individual Defendants discriminated against her by issuing the July 15, 2011 Final Warning because: (i) Plaintiff admitted that she failed to comply with the terms of the Academic Advisement and (ii) she submitted no evidence that another resident had "an extensive history of stubborn insubordination and absenteeism without notice, i.e. a history comparable to her."  (AA 615-17.)

On appeal, Plaintiff still does not understand the purpose of the self-reflection essay and claims it was a way to force her to accept blame for the incident.  (App. Br. 25.)  She argues that "there is no evidence that the allegations against Dr. Varughese's are true," despite her admissions to the contrary and the overwhelming record evidence to the contrary.  (App. Br. 28.)

### 6. The Fall 2011 Refusal To Transfer

The District Court found that Mount Sinai and the Individual Defendants did not discriminate against Plaintiff by refusing her request to change her elective rotation in Fall 2011 because: (i) she missed the July 1, 2011 deadline to request a transfer and (ii) Plaintiff submitted no evidence that Mount Sinai granted any other

transfer requests that were as untimely as hers.  (AA 617-18.)  Plaintiff fails to

address the District Court's holding on this issue in her brief and as a result, has

abandoned her claim based on Mount Sinai and the Individual Defendants' refusal

of her transfer request.  *See, e.g., Rogers v. City of New York*, 359 F. App'x 201,

202 (2d Cir. 2009) (holding that the claims dismissed by the district court that the

plaintiff did not challenge on appeal are abandoned); *LoSacco v. City of*

*Middletown,* 71 F. 3d 88, 92-93 (2d Cir. 1995) (holding that where a *pro se* litigant

raises an issue before the district court but fails to raise it on appeal, it is

abandoned).

### 7.    <u>The September 21, 2011 Termination</u>

The District Court correctly found that Mount Sinai and the Individual

Defendants terminated Plaintiff for the following legitimate non-discriminatory

reasons: (i) Plaintiff rifled through an administrator's files; (ii) her "disastrous

performance" on Najfeld's rotation; (iii) her insubordinate behavior towards Jordan

on August 5 and August 12, 2011; (iv) her refusal to accept the decision not to

consent to her untimely transfer request; (v) her poor conference attendance; and

(vi) her poor communication regarding her leave of absence.  (AA 618-22.)

In addition, the District Court found that Plaintiff presented no evidence of

discriminatory animus by any of the decision makers and could not identify any

one who had a similar record of "chronic lateness, absenteeism, refusal to follow

instructions, and explosive anger." (AA 619; AA 624.) The record fully supports this determination. Plaintiff admitted that she rifled through the files, behaved unprofessionally on Najfeld's rotation, failed to respond to Jordan's emails and pages and cursed at McCash. (AA 120-21; AA 80-88; AA 52.)

On appeal, Plaintiff continues to admit that she looked at the files, but blames Mount Sinai and the Individual Defendants for being "careless" for leaving the files unattended. (App. Br. 28.) She also argues, without citation to any evidence, that Najfeld's rotation was used to harass her. (App. Br. 29.) Indeed, the bulk of her argument centers on her view that the courts are corrupt. (App. Br. 31-32.) She does not point to any evidence (again, because there is none) that warrants reversal of the District Court's decision.

## POINT III.

## THE DISTRICT COURT'S DECISION GRANTING SUMMARY JUDGMENT TO MOUNT SINAI AND THE INDIVIDUAL DEFENDANTS SHOULD BE AFFIRMED BECAUSE PLAINTIFF IS UNABLE TO ESTABLISH A CLAIM FOR RETALIATION[2]

### A.     Applicable Legal Standard

To establish a *prima facie* case of retaliation under Title VII and the

NYSHRL, Plaintiff must show that: (i) she participated in a protected activity; (ii)

her employer was aware of this activity; (iii) she suffered a materially adverse

action; and (iv) there is a casual connection between the protected activity and the

materially adverse action.  *Kwan v. Andalex Group* LLC, 737 F. 3d 834, 843-44

(2d Cir. 2013).[3]

### B.     The District Court Correctly Found That There Was No Evidence That Mount Sinai And The Individual Defendants Retaliated Against Plaintiff For Engaging In Protected Activity

The District Court correctly held that "[t]he totality of the evidence simply

does not admit of an inference that Defendants retaliated against Plaintiff for

---

[2]   Mount Sinai and the Individual Defendants interpreted the Court's October 22, 2015 Order as permitting Plaintiff to appeal her retaliation and hostile work environment claims, even though the Order is limits her appeal to her discrimination claims.  If that reading of the October 22 Order is incorrect, then these claims are not properly before the Court for the reasons set forth in Point I.

[3] The standard differs under city law in that the NYCHRL does not require a materially adverse action.  *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). However, this difference is irrelevant in this case because Mount Sinai and the Individual Defendants do not dispute that Plaintiff's termination and the Final Warning are materially adverse actions.

engaging in any protected activity." (AA 640.) Specifically, the District Court found that: (i) Plaintiff did not engage in protected activity until April 2011 and (ii) the adverse actions that occurred after April 2011, specifically the Final Warning and her termination, were not retaliatory because they were part of a course of conduct that began well before she engaged in protected activity. (AA 639-40.) *See Slattery v. Swiss Reinsurance Am. Corp.,* 248 F. 3d 87, 95 (2d Cir. 2001) (holding that under federal and state law, where "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise"); *Melman*, 946 N.Y.S. 2d at 42 (holding that under the NYCHRL, "an employer's continuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no casual connection between the employee's protected activity and the employer's challenged conduct") (cited by the District Court, AA 639-40.)

On appeal, Plaintiff makes the unsupported assertion that she "made protected complaints before and after the illegal administration of the Academic Advisement." (App. Br. 37.) She fails to point to any evidence in the record of complaints made prior to the Academic Advisement. Her self-serving statement is insufficient to raise a genuine issue of material fact to avoid summary judgment. *See, e.g., Risco v. McHugh*, 868 F. Supp. 2d 75, 99 (S.D.N.Y. 2012) ("A plaintiff's

self-serving statement, without direct or circumstantial evidence to support the charge, is…insufficient.") (internal citations omitted).

# POINT IV.

## THE DISTRICT COURT'S DECISION GRANTING SUMMARY JUDGMENT TO MOUNT SINAI AND THE INDIVIDUAL DEFENDANTS SHOULD BE AFFIRMED BECAUSE PLAINTIFF IS UNABLE TO ESTABLISH A CLAIM FOR HOSTILE WORK ENVIRONMENT

### A.    Applicable Legal Standards

To establish a claim for hostile work environment under Title VII and the NYSHRL, a plaintiff must show that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Schiano v. Quality Payroll Sys. Inc.*, 445 F. 3d 597, 604, 609 (2d Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Although there is no severe and pervasive requirement under the NYCHRL, the NYCHRL "is not a general civility code." *Mihalik v. Credit Agricole Cheuvreux N. Am.*, 715 F.3d 102, 113 (2d Cir. 2013). In addition, "[w]here there is no evidence that an allegedly hostile work environment was motivated by a plaintiff's race [or gender or national origin], the claim must be dismissed." *White v. Fuji Photo Film USA, Inc.*, 434 F. Supp. 2d 144, 155 (S.D.N.Y. 2006).

### B.    The District Court's Determination That There Was No Evidence Of Discrimination Should Be Affirmed

The District Court correctly held that Mount Sinai and the Individual Defendants were entitled to summary judgment on  Plaintiff's hostile work

environment claims because she failed to produce any evidence that the events occurred in circumstances giving rise to an inference of discrimination.  (AA 628.)  The District Court also found that the evidence "merely reveals that, when she acted out, there were consequences, and that she happened to be a woman of Indian descent.  But again, 'I am a member of a protected class; my workplace is hostile; it must have been because of my protected class,' is a logical fallacy that does not insulate a plaintiff from summary judgment where the undisputed facts warrant dismissal of her claims."  (AA 633-34.)

On appeal, Plaintiff focuses her attention on her conspiracy theory regarding the death of a resident in another program and maligning the upper management of Mount Sinai. (App. Br. 33-34.)  In addition, she opines on her feeling that she was harassed without citing to any record evidence.  (App. Br. 35-36.)  None of this even begins to refute the District Court's finding that there was no evidence connecting any of the incidents that Plaintiff perceived as hostile to her membership in a protected class.

## **CONCLUSION**

For the foregoing reasons, the District Court's decision granting summary judgment to Mount Sinai and the Individual Defendants should be affirmed.

Dated:     New York, New York
           March 1, 2017

AKERMAN LLP

By: _____s/ Rory J. McEvoy_____
      Rory J. McEvoy
*Attorneys for Defendants-Appellees*
666 Fifth Avenue
20th Floor
New York, New York 10103
212.880.3800
rory.mcevoy@akerman.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Rory J. McEvoy, attorney of record for Defendants-Appellees, hereby certify that the foregoing brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B). The total number of words in the foregoing brief is 7,550.

Dated: New York, New York
    March 1, 2017

_____s/ Rory J. McEvoy_____
Rory J. McEvoy

STATE OF NEW YORK    )

                        )        ss.:      **AFFIDAVIT OF SERVICE**

COUNTY OF NEW YORK  )                        **BY MAIL**

I, Natasha S. Johnson, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age.

**On March 1, 2017**

deponent served the within: **Brief for Defendants-Appellees**

**upon:**

**Leena Varughese, M.D.**
**Plaintiff-Appellant, Pro Se**
**904 River Road**
**Piscataway New Jersey 08854**
**908-265-7536**

the address(es) designated by said attorney(s) for that purpose by depositing **2** true copy(ies) of same, in a postpaid properly addressed wrapper in a Post Office Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

This document was also submitted via the CM/ECF Case Filing System. Filing and service were performed by direction of counsel.

**Sworn to before me on March 1, 2017**

   s/Maria Maisonet                          s/Natasha S. Johnson

**MARIA MAISONET**
Notary Public State of New York
No. 01MA6204360
Qualified in Bronx County
Commission Expires Apr. 20, 2017

                                   **Job #271409**